IN THE UNITED STATES DISTRICT COURT

FOR SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON

RECEIVED

SEP 16 2004

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

JOHN DAVID MOONEY,                    *

    Petitioner,                       *

vs.                                    *    Case No. 3:02-00231

UNITED STATES OF AMERICA,              *             3:04-1001

    Respondent.                       *

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER

## TITLE 28 U.S.C. § 2255

**NOW COMES** the Petitioner, John David Mooney, pro se, and respectfully subit this Memorandum of Law in support of his motion pursuant to Title 28 U.S.C. § 2255 and in support thereto states to the Court the following:

### STATEMENT OF THE CASE

#### Statement of Facts

On August 4, 2002, Petitioner arrived home around 2:00 a.m. from his part-time job at Whisman's Bar on Adams Avenue. After Petitioner prepared himself a meal, he was confronted by his ex-wife, Florencia McCloud, in the master bedroom with a Charter Arms .38 caliber revolver. At the time of the confrontation, Ms. McCloud was under the influence of alcohol.

Petitioner disarmed Ms. McCloud by taking the firearm from her. An argument pursued with Petitioner placing a call to 911. **See** Exhibit A, Transcript of 911 calls. Refusing to talk to

the 911 operator, Ms. McCloud proceeded to physical attack Petitioner.
As Petitionerattempted to leave the physical abuse and the house,
Ms. McCloud tore the shirt off Petitioner's torso.

Before leaving the home, Petitioner placed a call to Terry
Whisman at the Whisman's Bar and told him that Ms. McCloud had
pulled the gun on him again and that he was returning to the
bar with the firearm.

Petitioner walked back to Whisman's Bar with the firearm
in his front pocket. Upon his arrival at the bar, Petitioner
went to place a telephone call to the police, however, he was
informed by Terry Whisman that the police were outside. Petitioner
walked to the door and told the police that he had a gun in his
pocket. At that time, he was placed under arrest.

Course of the Proceedings

On October 18, 2002, an indictment was filed charging Petitioner
with being a felon in possession of a firearm in violation of
Title 18 U.S.C. 922(g)(1) and 924(a)(2). On February 26, 2003,
Petitioner pled guilty to the single-count indictment. On May
12, 2003, Petitioner was sentenced to one hundred and eighty
(180) months.

Petitioner appealed the district court's denial of his motion
to withdraw his plea. On March 22, 2004, the Fourth Circuit
affirmed the district court's decision in an unpublished opinion.

## ARGUMENT

Petitioner submit that his plea was involuntary due to counsel's
erroneous assertion that he did not have an affirmative defense
to the charge of being a convicted felon in possession of a firearm

-2-

pursuant to Title 18 U.S.C. § 922(g)(1).

A plea must be both voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238, 242 (1969). Whether a plea is voluntary "for the purposes of the federal Constitution is a question of federal law." Marshall v. Lonberger, 459 U.S. 422, 431 (1983). Under Brady v. United States, 397 U.S. 742 (1970), a plea of guilty is involuntary when it is "induced by threats," "misrepresentation," or "by promises that are by their nature improper." Id., at 755 (quoting Shelton v. United States, 246 F.2d 571 572 n. 2 (5th Cir. 1957)). The voluntariness standard may be violated by misrepresentation in the form of inaccurate advice of counsel as to the availability of defense theories. Dickerson v. Vaugh, 90 F.3d 87, 91 (3rd Cir. 1996).

The Sixth Amendment of the United Staes Constitution entitles a defendant to effective assistance of counsel during all phases of a trial. Glover v. United States, 531 U.S. 198, 204 (2004). The principles governing ineffective assistance of counsel claims are familiar and petitioner knows no reason to belabor them here. Stickland v. Washington, 466 U.S. 668 (1984).

It is well-settled that the Strickland test applies to the plea process. Hill v. Lockhart, 474 U.S. 52 (1985). When examining an ineffective assitance claim arising out of the plea process, the slightly modified issue under the prejudice component of the Strickland test is "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id., at 59. To prevail. Petitioner must show that there is "a reasonable proability that, but for counsel's errors," he would have pled

-3-

not guilty and proceded to trial.  Id.

In an ordinary case, a criminal defense attorney should investigate the facts and explore the possibility of a defense to a charge before advising his client that there is no defense and failure to do so constitutes ineffective assistance of counsel under the Sixth Amendment.  Hill, supra at 59.

Cause Prong of Strickland

Petitioner submit that if counsel would have thoroughly investigated the facts of his case and compared them with the case law of this circuit--and other circuits--counsel would have learned that the :justification" defense was available to Petitioner's charge of being a felon in possession of a firearm.  By failing to convey this defnse to Petitioner. counsel's misrepresentation was the cause for Petitioner's involuntary and unintelligent guilty plea to the charges.

Due to the extraordinary circumstance of this case. Petitioner's sworn statements during the plea colloquy does not bar his claim. Petitioner's statements and those of his counsel actually support his attack on the voluntariness of the guilty plea based on counsel's misrepresentation.  "Solemn declarations in open court carry a strong presumption of verity."  Blackledge v.Allison, 431 U.S. 63. 74 (1977).  This is the very standard Petitioner argues that this Court apply since it must be able to rely on the statements made during Rule 11 colloquy.  United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003).

Unlike most defendants who attack the voluntariness of their guilty pleas, Petitioner does not attempt to contradict the statements

-4-

made during plea colloquy.  It is his contention that counsel's
statements, as well as his own, will demonstrate "cause" under
Strickland.

During the Rule 11 plea colloquy, Petitioner conveyed his
reservations to pleading guilty to Count One of the indictment.
(Transcript of Guilty Plea, 02-26-03, pp. 10-14).  After hearing
testimony from Petitioner and Special Agent Todd Willard, the
Court had the following exchange with counsel:

THE COURT:  All right.  Mr. Frazier, are you satisfied that
if this case went to trial, there would be no meritorious legal
defense to this charge?

MR. FRAZIER:  That's correct, Your Honor.

THE COURT:  Are you satisfied that Mr.  Mooney's constitutional
and other rights have been observed fully?

MR. FRAZIER:  Yes, sir.

(Transcript of Guilty Plea, 02-26-03, p.19).  Based on his own
words, counsel expressed without a doubt that Petitioner would
have no legal defense to the charge if the case went to trial.
After counsel's opinion as to the availability of defense, the
Court found that there was a sufficient factual basis and that
the plea was voluntary.  (Transcript of Guilty Plea, 02-26-03,
pp. 21, 26).

Before the change of plea hearing and during the plea colloquy,
Petitioner made it clear to counsel that he would only plead
guilty if the Court found that there was no legal defense based
on the circumstances of his case.  (Exhibit B, Petitioner's Affidavit
¶ 9).  Even though counsel made the assertion of no legal defense,
the Fourth Circuit recognizes the "justification" defense in

-5-

refernce to Title 18 U.S.C. § 922(g)(1). United States v. Perrin, 45 F.3d 869 (4th Cir. 1995). By stating that there was no legal defense, counsel's performance "fell below an objective standard of reasonableness." Strickland, supra at 688. A quick search of the United States Code Annotated related to Title 18 U.S.C. § 922(g)(1) would relieve a list of defenses and the case citation of Perrin under the subsection of "justification." It would be unreasonable to hold that a layman can find said defense while holding that a schooled-attorney would not have found it through his basic obligation to a client. United Staes v. Russell, 221 F.3d 615, 620 (4th Cir. 2001).

Instructive on whether petitioner has proven the first prong of the Strickland test is McGraw v. United States, 106 F.3d 391 (4th Cir. 1997)[1]. Even though the decision in McGraw weighed heavily on the "prejudice" prong of Strickland, it is still instructive on the "clause" prong because it would have been unnecessary for the Court to vacate and remand the case if the appellant had not satisfied both prongs. McGraw, slip opinion at 2. It is clear that counsel's misrepresentation regarding the availability of an affirmative defense led to the "clause" of Petitioner's involuntary plea.

### Prejudice Prong of Strickland/Hill

Under the second prong of Strickland, a "defendant must show that there is a reasonability that, but for counsel's unprofessional errors, the result...whould have been different" to succeed on

---

1. Pursuant to Rule 36(c) of United States Courts of Appeals Rules for the Fourth Circuit, a copy of the unpublished disposition has been attached as Exhibit C.

a claim of ineffective assistance of counsel. <u>Strickland</u>, supra at 688. Since this claim of ineffective assistance of counsel is in the context of a guilty plea, Petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. <u>Hill</u>, supra at 59.

It is quite apparent from Petitioner's statements during polea colloquy that if counsel would have informed him of a valid defense to his unlawful possession of the firearm, he would not have pled guilty and proceeded to trial. (Exhibit B, Petitioner's Affidavit, ¶ 7). However, counsel assured Petitioner and the Court that there was no affirmative defense. Based on the below argument, petitioner could have proceeded to trial and presented the justification defense to the jury.

Without addressing the availability of the justification defense in reference to being a convicted felon in possession of a firearm, the Fourth Circuit adopted a four-prong test to evaluate the merits of a justification defense in <u>United States v. Crittendon</u>, 883 F.2d 326 (4th Cir. 1989). The evidence must demonstrate: (1) that defendant was under unlawful and present threat of death or serious bodily injury; (2) that defendant "did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;" (3) that defendant "had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm);" and (4) "there is direct causal relationship between the criminal action and the avoidance of the threatened harm." <u>Id</u>., at 330.

-7-

Six years later, the Fourth Circuit held that a defendant could present a justification defense in reference to Title 18 U.S.C. § 922(g)(1) only if he satisfied the four-prong test of Crittendon.   United v. Perrin, 45 F.3d 869, 873-74 (4th Cir. 1995).   In Perrin, the Court concluded that the defendant was "unable to demonstrate that 'a real and specific threat existed at the time of the unlawful possession." Id., at 875(quoting Crittendon, 883 F.2d at 300).   Unlike the defendant in Perrin, Petitioner is confident that if counsel had:  (1) investigated the information supplied by Petitioner; (2) realized the availability of the justification defense; (3) presented the necessary evidence; and (4) requested that the jury be instructed on the defense of justification, he would have satisfied the prongs of Crittendon and would have been acquitted of being a felon in possession of a firearm.

Since justification is an affirmative defense, the elements of justification would have been required by only a preponderance of the evidence.   Patterson v. New York, 432 U.S. 197, 210-11 (1977); United States v. Dodd, 225 F.3d 340, 349 (3rd Cir. 2000). Petitioner will now demonstrate how counsel could have proved all four prongs of Crittendon.

The first requirement for the successful employment of the justification defense if that Petitioner "was under unlawful and present threat of death or serious bodily injury[.]"   Crittendon, supra at 330.   The harm that Petitioner would have asserted that he desired to avoid was the death or serious bodily injury to his person.   (Exhibit B, Petitioner's Affidavit, ¶ 2, 5, 6).

-8-

Applying an objective standard of what is right and proper conduct
under Petitioner's circumstances necessarily leads to the conclusion
that it would be better for Petitioner to have possessed the firearm
for a brief period of time than to have had Florencia McCloud
kill or severly injure him.  Moreover, Petitioner would not that
the threat (a) was unlawful, because Florencia mcCloud was threatening
to shot him; (b) was present, because Ms. McCloud had the gun
in her hand and pointing it at Petitioner; and (c) was of a nature
as to induce a well-grounded apprehension of death or serious
bodily injury, because Ms. McCloud was under the influence of
alcohol, made her intention to do harm, had in the past shot her
former husband, shot at people, and pointed the gun at Petitioner.

    In several circuits, defendants have been found to satisfy
the first requirement of the justification defense when the circumstances
are similiar or less serious than those of Petitioner.  United
States v. Panter, 688 F.2d 268, 269-72 (5th Cir. 1982); United
States v. Paolello, 951 F.2d 537, 541-43 (3rd Cir. 1991); United
States v. Gomez, 92 F.3d 770, 776 (9th Cir. 1996).  Petitioner
submit that the first prong would have been met.

    As for the second requirement of Crittendon, the facts would
not even suggest that Petitioner recklessly placed himself in
the situation that led him to choose the criminal conduct.  This
is not the type of case where a felon went looking for trouble
after arming himself.  Perrin, supra at 874(citing United States
v. Wheeler, 800 F.2d 100, 107 (7th Cir. 1986).  Instead, Petitioner
was behaving in a perfectly reasonable and legal manner when the
situation presented itself to him.  There was no reson for him

-9-

to think that , coming home, he ws inviting a confrontation with his armed ex-wife. As the Third Circuit recognized, "[t]his case diifers qualitatively from one in which, for example, a defendant enters a premises to commit a crime and then is confronted with an armed occupant." Paolello, supra at 541.

It simply cannot be said that Petitioner was behaving recklessly by being at his home. Thus a reasonable juror could not conclude that he did act recklessly in doing so.

Thirdly, counsel could have demonstrated that Petitioner fulfilled the fird requirement: "he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm)[.]" Crittendon, supra at 330. Even though this Court stated that "[i]f she was holding a gun on you or threatened you with a gun away from her her and threw it in the garabage or sonething or threw it out in the street or something like that, that might be defense to this charge," Petitioner argues that his actions were not so unreasonable to prevent the use of the justification defense. (Transcript of Sentencing Hearing, 05-012-03, p. 14).

A reasonable jury could find those suggested alternatives implausible and unreasonable, if it counclude Petitioner was faced with an emergency situation. The cases in which this requirement has been deemed not to be met have all been case in which the defendant's illegal conduct spanned over a long period. United States v. Brown, 246 F.3d 668 (4th Cir. 2001)[2]. In Brown, the defendant was involved in illegal activity for more than twenty

---

2. Pursuant to Rule 36(c) of United States Courts of Appeals Rules for the Fourth Circuit, a copy of the unpublished disposition has been attached as Exhibit D.

$$-10-$$

without any attempt to dispose of the firearm. Unlike the defendant in Brown, Petitioner attemped to contact the police before making the ultimate decision to leave the home with the firearm. It was only after the physical confrontation with his ex-wife that Petitioner actually left the home with the intentions of turning over the firearm to the police.

When weighing the evidence against the third requirement, this Court should use the approach adopted by District of Columbia Circuit in United Staes v. Mason, 233 F.3d 619, 625 (2000). Faced with the a factual dispute, the Court reasoned that "[t]his is precisely the kind of dispute that should be submitted to a jury." Id., at 625. Petitioner conduct was reasonable if he took the necessary steps to avoid the legal act and could not avail himself to a readily acessible alternative.

When criminal conduct endures for years, days, or even hours, it is logical to conclude that a defendant who is not under a constant threat would have ample opportunity to choose a legal alternative. The same is not true in this case, where there is evidence that the emergency situation unfolded rapidly and that Petitioner's criminal conduct lasted for a mere seventeen minutes. According to the evidence, Ms. McCloud pulled the gun on him as he sat in the bed. Under such circumstances, a jury could conclude that if Petitioner would have thrown the gun in the trash or the street--as suggested by the Court--, he would have inadvertently allowed the firearm to fall back into the hands of his ex-wife or into the hands of a criminal or a child. Furthermore, it would be reasonable to conclude that there was a critical situation

-11-

that simply did not allow Petitioner the luxury of choosing from among several alternative courses of action, some of which would not have required him to perform an illegal act. United States v. Lewis, 628 F.2d 1276, 1279 (10th Cir. 1980). Accordingly, counsel could have presented sufficient evidence to allow a jury to find that Petitioner had no time to attempt a legal alternative to possessing the firearm. McGraw, supra at 2.

Finally, counsel could have presented evidence to satisfy the fourth requirement: that "there is a direct causal relationship between the criminal action and the avoidance of the threatened harm." Crittendon, supra at 330. Petitioner possessed the weapon with the singular purpose of protecting himself from the threatened attempts on his person. This provides the sufficient nexus for the causal relationship element.

The circumstances surrounding Petitioner's possession of the firearm confirms that there was a strong causal connection to the threat. When found by police, the firearm was still located in the pocket of Petitioner, which was the original location of placement after taking the firearm from his ex-wife. (Exhibit B, Petitioner's Affidavit, ¶ 2). Had his ex-wife attempted to threaten him again, the firearm could not have been used to facilitate the threat against him. It is plainly apparent that disarming his ex-wife (the illegal action) could reasonably be expected to avoid having his ex-wife shoot him (the threaten harm).

Whereas counsel could have established a factual basis for the four required elements of justification defense, counsel erred by informing Petitioner and the Court that there was no affirmative

-12-

defense available. If not for counsel's unprofessional error as to the availability of an affirmative defense, Petitioner would have pled not guilty and insisted on going to trial. (Exhibit B, Petitioner's Affidavit, ¶ 11). At the time of Petitioner's plea, the justification defense was a sound as a matter of law and that the evidence could have supported a not guilty verdict on this theory was enough to warrant investigation and presentation by counsel. Therefore, counsel's misrepresentation clearly demonstrated "prejudice" under Strickland and Hill.

Futhermore, counsel could not have reasonable believed that Petitioner could benefit from his erroneous advice. By pleading guilty, counsel knew that Petitioner would receive only a three-point reduction for acceptance of responsibility. Regardless of the guideline renge of imprisonment, Petitioner's sentence would still be governed by the mandatory sentence of Title 18 U.S.C. § 924(e).

In addition to the mandatory minimum sentence, counsel should have known that Petitioner case presented a "rare situation" where a reduction for acceptance of responsiblity applied notwithstanding the trial. Under Chapter 3E1.1 of the United States Sentencing Guidleines, a defendant may receive a reduction for acceptance of responsibility even after proceeding to trial. Commentary Note Two staes in pertinent part: "Conviction by trial however , does not automatically preclude a defendant from consideration for such a reduction. In rare situations, a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercise his constitutional right to a

-13-

trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt...." U.S.S.G. § 3E1.1 cmt. n.2. Even though the commentary desribes a few simply examples, those examples are not intended to be exhaustive. In Re: Sealed Case, 350 F.3d 113, 119 (D.C. Cir. 2003)(listing cases).

In United States v. Garcia, 182 F.3d 1165 (10th Cir. 1993), the Tenth Circuit held that proceeding to trial on the theory of an affirmative defense does not preclude a defendant from receiving "an acceptance of responsibility reduction." Id., at 1173. Like the defendant in Garcia, Petitioner would not have been "denying the essential factual elements of guilt" by raising the justification defense. U.S.S.G. § 3E1.1 cmt. n. 2.

Moreover, Petitioner would have been required to admit: (1) that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that he knowingly possessed a firearm; and (3) that the firearm had passed in interstate commence before he could even present the justification defense. The very factual basis for the underlying justification defense would have served as a basis for acceptance of responsibility.

It has already been held that the justification defense does not nagate the mens rea elements of Title 18 U.S.C. § 922(g)(1). United States v. Smith, 160 F.3d 117, 123 (2nd Cir. 1998); United States v. Dodd, 225 F.3d 340, 344 (3rd Cir. 2000); United States v. Deleveaux, 205 F.3d 1292, 1300 (11th Cir. 2000). Therefore, counsel's unprofessional errors cannot be viewed as a strategical

-14-

decision due to the fact that Petitioner would not have suffered any adverse effect by proceeding to trial.

## CONCLUSION

For the foregoing reasons, this Honorable Court should grant the petitioner relief as requested and set-aside, vacate and/or correct his conviction. In the alternative, this Court may grant him an evidentiary hearing to further develop and establish the facts and arguments for review.

Respectfully submitted,

John David Mooney
Reg. No. 04890-088
F.C.I. Gilmer
P.O. Box 6000
Glenville, W.V. 26351

-15-

## Cabell County 911 Call
### 08/04/02   2:17:33

| | |
|---|---|
| Female: | (Inaudible) |
| 911: | 911 |
| Female: | Buddy you wanna go to jail? |
| Male: | I'm not worried about (inaudible) |
| Female: | (Inaudible) |
| Male: | I'm not worried about going to jail, Sandy. Don't you understand that? I'm not worried about going to jail. You're losing your gun. You'll never pull it on me again. |
| Female: | I didn't pull it on you, you got it out. You knew where it was and you got it out. |
| Male: | Did I really. |
| Female: | John, give me the gun and go do your girlfriend's shit, go (inaudible) girlfriend's shit. |
| Male: | Get off (inaudible) leave me |
| Female: | Alright, alright. |

*Phone call is disconnected*

## Cabell County 911 Call
### 08/04/02   2:19:19

| | |
|---|---|
| 911: | 911 |
| Male: | (Inaudible) pull it on me again. Do you understand? |
| Female: | I didn't ask you to come here |
| Male: | (Inaudible) |
| Female: | (Inaudible) |

Exhibit A

| | |
|---|---|
| Male: | (Inaudible) |
| Female: | (Inaudible) you'll go to jail, you'll go to jail. |
| Male: | Sandy, that's the best thing you can do. I'm not going to jail, your ass. |

### Cabell County 911 Call
#### 08/04/02  2:23:57

| | |
|---|---|
| 911: | 911 |
| Female: | Could you please send one down to 2608 Adams Avenue, someone broke in my house and took my gun out the house, John Mooney. |
| 911: | When did it happen? |
| Female: | Just now. |
| 911: | Is John a black or white male? |
| Female: | He's white. |
| 911: | How old is he? |
| Female: | He's uh, uh, Alan work, Alan working tonight, Alan, I don't know. |
| 911: | Okay, is he a black or white male? |
| Female: | He's white. |
| 911: | What's he wearing? |
| Female: | Uh, uh he had on a white t-shirt, he's just wearing brown shorts, he on his way to Whisman's. |
| 911: | Brown shorts? |
| Female: | Brown shorts, no t-shirt, he come here |
| 911: | No t-shirt or a white t-shirt? |
| Female: | No t-shirt. |
| 911: | Okay, how old is he? |

Exhibit A

| | |
|---|---|
| Female: | Uh, forty-seven, and the gun's registered to me. |
| 911: | Okay, about how tall is he? |
| Female: | Huh, five-seven. |
| 911: | About how much does he way? |
| Female: | Uh, I don't know about, uh one forty-seven, fifty, I don't know. |
| 911: | Okay. |
| Female: | I was in bed asleep |
| 911: | What's he driving? |
| Female: | Huh, he's not driving, he's walking down to Whisman's, |
| 911: | He's on foot? |
| Female: | He's going down to Whisman's |
| 911: | Okay, what color hair does he have? |
| Female: | Uh, uh brown or dark brown. |
| 911: | Any facial hair? |
| Female: | Uh, yes he has a beard. |
| 911: | Okay. |
| Female: | I was in bed asleep, and he come in the house, and I don't know how he got in the house |
| 911: | Is he an ex-boyfriend or ? |
| Female: | He's my ex-husband. And (inaudible) where the gun was, now I'm allowed to have a gun in my house. |
| 911: | Okay, I will uh, what's your name? |
| Female: | My name's, uh Sandy McCloud. |
| 911: | Okay, I'll send somebody down there. |

Exhibit A

Female:            Thank you.

911:               Mm-huh.

Exhibit A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**Huntington**

| | | |
|---|---|---|
| JOHN DAVID MOONEY, | * | |
|     Petitioner, | * | |
| vs. | * | Caso No. _____ |
| UNITED STATES OF AMERICA, | * | |
|     Respondent. | * | |

### AFFIDAVIT OF JOHN DAVID MOONEY

**NOW COMES** The Affiant, John David Mooney, who does depose and say:

1. I am the petitioner in the above-referenced case.

2. That on August 4, 2002, I returned home from work at approximately 2:00 a.m.. After preparing a meal, I retired to the master bedroom with my meal. As I set in the bed eating my meal, my ex-wife--Florencia "Sandy" McCloud--retrieved her gun from the lockbox directly beneath her side of the bed. Before I could question her actions, she had placed the gun physically against the side of my head around the temple area. In the course of placing my drink on the night stand, I spun around and pulled the gun from her hand. I got out of the bed with the gun and placed a call to Terry Whisman at Whisman's Bar. I told him that Sandy had pulled the gun on me again and that I was bringing the gun to the bar to turn it over to the police. At this point, an argument took place where Sandy demanded that I return the

-1-

**EXHIBIT B**

7.  I expressed the fact that I thought I should have a defense to the charge since I was doing the right thing.

8.  Mr. Frazier informed me that there was no defense because all the prosecutor had to prove was that I was a felon with a firearm.

9.  I informed Mr. Frazier that I would only plead guilty if the judge agreed with the fact that there was no defense to the charge.

10.  I pled guilty because I truly believed that there was no defense available to the charge based on the facts of my case.

11.  If I would have known of the availability of the "justification" defense, I would have pleaded not guilty and gone to trial on the grounds that I possessed the firearm only to protect myself from my ex-wife.

FURTHER AFFIANT SAYETH NOT.

This the ___2___ day of September, 2004.

John David Mooney

Sworn to and subscribed before me on this the ___2___ day of September, 2004.

My commission expires: 8/29/2013

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
CANDACE WARFIELD
201 FCI LANE
GLENVILLE, WV 26351
My commission expires August 29, 2013

-3-

EXHIBIT B

Case 3:02-cr-00231 Document 60 Filed 09/16/04 Page 22 of 28 PageID #: 283

106 F.3d 391, McGraw v. U.S., (C.A.4 (N.C.) 1997)

Page 1

**\*391** 106 F.3d 391

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

**James Patrick McGRAW, Plaintiff-Appellant,**
v.
**UNITED STATES of America, Defendant-Appellee.**
No. 96-6161.
Submitted Oct. 22, 1996.
Decided Jan. 24, 1997.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, Senior District Judge. (CR-93-149, CA-95-104-3-P)

Randolph Marshall Lee, Charlotte, North Carolina, for Appellant.

Kenneth Davis Bell, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Before HAMILTON and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

OPINION

PER CURIAM:

James Patrick McGraw appeals from the district court's order reversing the magistrate judge's memorandum and recommendations, and denying McGraw's motion under 28 U.S.C. § 2255 (1994), *as amended by* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214. McGraw's motion claims ineffective assistance of counsel based on his trial counsel's failure to investigate and assert a statute of limitations defense based on his alleged 1987 withdrawal from the conspiracy to which he pled guilty. Based on our review of the entire record, the magistrate judge's memorandum and recommendations, and the district court's opinion, we vacate the district court's opinion, grant McGraw's motion, and remand the case to the district court with instructions to set aside McGraw's conviction and give him the right to negotiate a

mutually acceptable plea agreement or to plead not guilty and proceed to trial.

To prevail on an ineffective assistance of counsel claim in the context of a conviction following a guilty plea, McGraw must show that defense counsel's representation fell below an objective standard of reasonableness pursuant to the prevailing professional norms, and that but for counsel's unprofessional errors he would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart,* 474 U.S. 52, 58 (1985). Although the *Hill* standard is based upon the "general" framework for proving ineffective assistance of counsel when conviction has followed a trial, *see Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984), the "prejudice" analysis contained in *Hill* is materially different from *Strickland.* In order to prove ineffective assistance of counsel under *Strickland,* a petitioner must show that the result of his trial would have been different. *See id.* at 694. However, when the conviction at issue has followed a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. "Because a guilty plea is valid only if it represents a knowing and voluntary choice among alternatives," defense counsel has a duty to investigate possible defenses and to advise the defendant so that he can make an informed decision. *Savino v. Murray,* 82 F.3d 593, 599 (4th Cir.), *cert. denied,* 117 S.Ct. 1 (1996); *see Via v. Superintendent, Powhatan Correctional Ctr.,* 643 F.2d 167, 174 (4th Cir.1981) (discussing the duties and obligations of defense counsel). Of course, there is no prejudice if there was no reasonable probability that the withdrawal defense would have succeeded at trial. *Hill,* 474 U.S. 59; *Savino,* 82 F.3d at 599.

Given the facts which were known, or should have been known through diligent investigation and legal research, to trial defense counsel prior to advising McGraw to plead guilty, we find that McGraw had at least a colorable withdrawal defense, *i.e.,* he had a colorable claim that he withdrew from the conspiracy. *United States v. Urbanik,* 801 F.2d 692 (4th Cir.1986). The viability of that defense was a jury question. *Hyde v. United States,* 225 U.S. 347, 371 (1912); *United States v. Wooten,* 688 F.2d 941, 946 (4th Cir.1982); *United States v. Grubb,* 527 F.2d 1107, 1109 (4th Cir.1975). However, McGraw never was given the opportunity to present his colorable withdrawal defense to the jury because counsel told him to plead guilty after conducting an ineffective and cursory investigation into the circumstances

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

**EXHIBIT C**

surrounding McGraw's alleged withdrawal. Accordingly, we find that trial defense counsel was ineffective, and that but for defense counsel's errors, McGraw would not have pled guilty and would have insisted on going to trial. *See Hill,* 474 U.S. at 56, 58

\*391_ We grant the Appellee's motion to supplement the record. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*VACATED AND REMANDED*

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

**EXHIBIT C**

246 F.3d 668, U.S. v. Brown, (C.A.4 (Md.) 2001)

**\*668**  246 F.3d 668

NOTICE:  THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

**UNITED STATES of America, Plaintiff-Appellee,**
v.
**Robert Lewis BROWN, Defendant-Appellant.**
No. 00-4282.
Argued Feb. 28, 2001.
Decided March 15, 2001.

Defendant was convicted in the United States District Court for the District of Maryland, Frederic N. Smalkin, of being a felon in possession of a firearm, and he appealed. The Court of Appeals held that defendant failed to present sufficient evidence to support his justification defense.

Affirmed.

[1]  Criminal Law ☞38
110 ----
110II Defenses in General
110k38  Compulsion  or  Necessity; Justification  in  General.

To assert a justification defense to a charge of being a felon in possession of a firearm, a defendant must provide evidence from which a factfinder could conclude that: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative to both the criminal act and the avoidance of the threatened harm; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. 18 U.S.C.A. § 922(g)(1).

[2]  Criminal Law ☞772(6)
110 ----
110XX Trial
110XX(G)  Instructions:  Necessity, Requisites,  and  Sufficiency
110k772  Elements  and  Incidents  of Offense, and Defenses in General

110k772(6) Defenses in General.

As a general rule, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.

[3]  Criminal Law ☞569
110 ----
110XVII Evidence
110XVII(V) Weight and Sufficiency
110k569 Defenses in General.

Testimony of defendant's wife that he was not carrying a gun when he left for his sister's apartment and of defendant's sister that defendant went to her apartment at her request was sufficient to establish that defendant did not recklessly place himself in a situation where he would be forced to engage in criminal conduct, for purposes of establishing a justification defense to a charge of being a felon in possession of a firearm. 18 U.S.C.A. § 922(g)(1).

[4]  Criminal Law ☞569
110 ----
110XVII Evidence
110XVII(V) Weight and Sufficiency
110k569 Defenses in General.

Testimony of defendant's wife that, when he left for his sister's apartment, he was not carrying a gun and of defendant's sister that she had sent defendant to her apartment to prevent boyfriend from harming her daughter and grandson was insufficient to establish that altercation occurred between defendant and boyfriend in which defendant acted to minimize threat of death or serious bodily injury to his niece or her son; evidence did not establish that defendant and boyfriend ever came in contact with one another on night of defendant's arrest for being a felon is possession of a firearm. 18 U.S.C.A.§ 922(g)(1).

[5]  Criminal Law ☞38
110 ----
110II Defenses in General
110k38  Compulsion  or  Necessity; Justification  in  General.

[See headnote text below]

[5]  Criminal Law ☞330
110 ----
110XVII Evidence
110XVII(C) Burden of Proof
110k326 Burden of Proof
110k330 Matters of Defense and Rebuttal in General.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

**EXHIBIT D**

246 F.3d 668, U.S. v. Brown, (C.A.4 (Md.) 2001)

[See headnote text below]

[5] Criminal Law ☞772(6)
  110 ----
    110XX Trial
      110XX(G)  Instructions:  Necessity,
                    Requisites,  and
                    Sufficiency
        110k772  Elements  and  Incidents  of
                    Offense, and Defenses
                    in General

110k772(6) Defenses in General.

A defense of justification, and thus a justification instruction, is available to a defendant who violates the statute prohibiting felons from possessing firearms to protect a third party under threat of death or serious bodily injury; however, the defendant bears the burden of proving that a threat of death or serious bodily injury actually existed, thus compelling the violation of statute. 18 U.S.C.A. § 922(g)(1).

*668_ [6] Criminal Law ☞569
  110 ----
    110XVII Evidence
      110XVII(V) Weight and Sufficiency
      110k569 Defenses in General.

Without sufficient evidence that defendant had an altercation with his niece's boyfriend, during which defendant disarmed boyfriend, evidence was insufficient to establish that defendant lacked a reasonable alternative to avoiding a violation of statute prohibiting felons from possessing firearms. 18 U.S.C.A. § 922(g)(1).

[7] Criminal Law ☞38
  110 ----
    110II Defenses in General
      110k38  Compulsion  or  Necessity;
                    Justification  in
                    General.

Even assuming that alleged altercation took place during which defendant disarmed his niece's boyfriend, defendant's continued possession of handgun after asserted threat of death or serious bodily injury had dissipated, without attempting to contact authorities or safely dispose of gun, negated any possible satisfaction of justification defense element requiring defendant to establish that he had no reasonable legal alternative, in prosecution for being a felon in possession of a firearm. 18 U.S.C.A. § 922(g)(1).

[8] Criminal Law ☞38
  110 ----
    110II Defenses in General

110k38  Compulsion  or  Necessity;
                    Justification  in
                    General.

Absent evidence that defendant had an altercation with his niece's boyfriend, there could be no direct causal link between the act of disarming boyfriend and the avoidance of harm to niece and her son, as was required to establish a justification defense to charge of being a felon in possession of a firearm. 18 U.S.C.A. § 922(g)(1).

Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-99-423).

Beth Mina Farber, Assistant Federal Public Defender, Baltimore, MD, for appellant.

Andrew George Warrens Norman, Assistant United States Attorney, Baltimore, MD, for appellee.

ON BRIEF: James Wyda, Federal Public Defender, Baltimore, MD, for appellant. Lynne A. Battaglia, United States Attorney, Baltimore, MD, for appellee.

Before MICHAEL, MOTZ, and TRAXLER, Circuit JJ.

OPINION

PER CURIAM.

In this appeal, Robert Lewis Brown challenges his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1994) on the ground that the district court erroneously denied his request for a jury instruction on the defense of justification. We affirm.

I.

In May 1999, Janiece Miller and her son, Willie Forrest, lived with Gloria Miller, Janiece's mother, in a Baltimore apartment. Gloria did not approve of her daughter's boyfriend, Leonard Swanigan; in fact, because Swanigan assertedly had abused Janiece and Willie, Gloria forbade her daughter from inviting Swanigan into the apartment.

Nevertheless, on May 13, 1999, while Gloria was at work, Janiece allowed Swanigan into the apartment. That night, at approximately 8:00 p.m., Gloria called the apartment and spoke to Willie, her grandson, who informed her of Swanigan's presence.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

EXHIBIT D

Gloria asked to speak with her daughter and, once Janiece was on the line, ordered her to tell Swanigan to leave the apartment immediately. Janiece complied with her mother's demand and Swanigan left the apartment some time after 8:00 p.m.

Concerned about her daughter and grandson's well-being, Gloria called her brother, Robert L. Brown, and asked him to go to the apartment to ensure that Swanigan had vacated the premises. Brown complied and arrived at the apartment well before 9:00 p.m. Once inside, Brown confronted his niece, Janiece, about inviting Swanigan into the apartment. A heated argument erupted during which Brown assertedly struck Janiece. At various times during Brown's visit, Janiece called 911 for help. At one point, while Janiece was on the phone with an emergency operator, Willie exclaimed that Brown had a gun. Janiece reiterated Willie's observation to the 911 operator. At trial, Janiece testified that she did not see a gun, but that she heard "something hard hit the floor" before her son cried out.

**\*668** Police officers arrived at the apartment around 9:00 p.m., but Brown was no longer there. They spoke with Janiece briefly, obtained a physical description of Brown and his car, ensured that the apartment was safe, and then left to comb the surrounding neighborhood for Brown. A few minutes later, Brown reappeared at the apartment, knocked on the door, and, when Janiece answered, suggested that she talk to him. Janiece refused and Brown left again. Janiece again called 911.

Thereafter, police officers found Brown reclining in his car with the seat back on a nearby street. They questioned Brown briefly and, after determining his identity, asked him to step outside of his car. When Brown opened the car door, the interior light illuminated, revealing a handgun protruding from under the driver's seat. The police officers arrested Brown and confiscated the handgun at approximately 9:20 p.m. During the arrest, Brown stated that the gun belonged to his niece's boyfriend and that he had taken it from the boyfriend during an altercation.

Brown was indicted and tried for violating 18 U.S.C. § 922(g)(1), which provides, in relevant part, that "[i]t shall be unlawful for any person[,] who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[,] to ... possess in or affecting commerce, any firearm." At the close of the evidence, Brown's counsel requested a jury instruction on the defense of justification. The district court rejected the request, finding that there

was insufficient evidence to warrant the instruction. Brown appeals that ruling.

II.

[1][2] To assert a justification defense to a § 922(g)(1) charge a defendant must provide evidence from which a factfinder could conclude that: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. *See United States v. Perrin,* 45 F.3d 869, 873-74 (4th Cir.1995) (citing *United States v. Crittendon,* 883 F.2d 326, 330 (4th Cir.1989)). As a general rule, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Matthews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). But a defendant must present sufficient evidence to create a jury issue as to all four elements to obtain a justification instruction.

[3] Brown did proffer some evidence as to the second element, that he did not "recklessly place himself in a situation where he would be forced to engage in criminal conduct." On this point, Brown offered the testimony of his sister, Gloria Miller, who stated that Brown went to the apartment at her request and the testimony of his wife, who stated that Brown did not leave their home with a gun. The district court held that "[t]here's [sic] some evidence that if he went there, that he did not recklessly do so." The government does not rebut the court's finding. Thus, we find that Brown has satisfied the second element of the *Perrin* test. However, Brown has failed to meet his burden as to any of the other elements.

[4][5] As to the first element, that he was under an unlawful, present threat of death or serious bodily injury, Brown contends that he acted to protect Janiece and Willie from Swanigan's abuse. To be sure, a defense of justification, and thus a justification instruction, is available to a defendant who violates § 922(g)(1) in order to protect a third party under threat of death or serious bodily injury. *See United States v. Newcomb,* 6 F.3d 1129, 1135-36 (6th Cir.1993) (finding that defendant who disarmed his girlfriend's son to protect a third party may assert the defense). However, the defendant bears the burden of proving that a threat of death or serious bodily injury actually

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

existed, thus compelling the § 922(g)(1) violation. Here, Brown has proffered insufficient evidence even to create a jury issue on this question.

Brown relies on the testimony of his wife, Wanda, that when he left for the apartment on the night of May 13, 1999, he was not carrying a gun, and on the testimony of his sister, Gloria, that Swanigan had abused her daughter, Janiece, and her grandson, Willie, and that she had sent Brown to the apartment to prevent Swanigan from harming anyone there. Although Brown did not testify at his trial, he also relies on his statements made to the police during his arrest that he had obtained the gun from Swanigan in an altercation.

*668_ This evidence provides an insufficient basis to find that an altercation occurred between Brown and Swanigan in which Brown acted to minimize the threat of death or serious bodily injury to his niece or her son. None of the evidence adduced at trial establishes that Brown and Swanigan ever came in contact with one another on the night of his arrest. Indeed, when the police arrived at the apartment in response to Miller's 911 calls, neither Brown nor Swanigan were anywhere to be found. Brown's counsel even concedes that Janiece, Willie, and Swanigan testified that Swanigan had left the apartment before Brown arrived. Brief of Appellant at 7 n. 3. (FN*) Moreover, Brown's own statement during his arrest is self-serving and, absent cross-examination, unreliable.

We note that the cases on which Brown relies are distinguishable. For example, in *United States v. Newcomb*, 6 F.3d 1129, 1131 (6th Cir.1993), the defendant, his girlfriend, and his friend testified that the defendant was watching television when his girlfriend entered the room and told him that her son had just grabbed a gun and ran outside, threatening to kill someone. The defendant then pursued his girlfriend's son and confiscated and disposed of the gun. *Id.* Similarly, in *United States v. Paolelo*, 951 F.2d 537, 539 (3d Cir.1991), the defendant and his stepson testified that a man struck the stepson in a bar and that the defendant wrestled a gun away from the assailant to protect his stepson. Thus, in both *Newcomb* and *Paolello*, the defendant not only testified at trial as to the specific life-threatening event that forced him to violate the law, but also had additional witnesses testify to the same on his behalf. Here, in contrast, neither Brown nor any other witness presented first-hand testimony regarding the alleged altercation with Swanigan. For these reasons, we must conclude that Brown failed to offer sufficient

evidence to create a jury question on the first element of the *Perrin* test.

[6] Brown also failed to offer sufficient evidence, as to the third element, that he had "no reasonable legal alternative" to fighting and disarming Swanigan. Put simply, without sufficient evidence that an altercation occurred, there can not be sufficient evidence that Brown lacked a reasonable alternative to avoiding a violation of § 922(g)(1). *See United States v. Holt*, 79 F.3d 14, 17 (4th Cir.1996) (requiring defendants seeking a self-defense instruction to provide "evidence demonstrating a lack of reasonable legal alternatives to committing the crime").

[7] Moreover, even assuming that the alleged altercation did take place, Brown's continued possession of the handgun after the asserted threat of death or serious bodily injury had dissipated, without attempting to contact the authorities or safely dispose of the gun, negates any possible satisfaction of this element. *See United States v. Mason*, 233 F.3d 619, 624 25 (D.C.Cir.2001) ("[I]t is the retention of [a firearm], rather than the brief possession for disposal ..., which poses the danger which is criminalized by felon-in-possession statutes.") (internal quotation marks omitted). Police officers found Brown in his car around 9:20 p.m., approximately twenty minutes after they arrived at the apartment in response to Janiece Miller's 911 calls; Willie noticed that Brown had a gun before the police arrived; and prior to Willie's observation, Brown and Janiece Miller had been engaged in a hostile argument for a period of time. Thus, Brown was in possession of the firearm for at least twenty minutes without attempting to rid himself of it. Accordingly, Brown failed to proffer sufficient evidence to create a jury question as to the third element of the *Perrin* test.

[8] Finally, because Brown has failed to demonstrate that an altercation with Swanigan took place, there can be no direct causal link between the act of disarming Swanigan and the avoidance of harm to Janiece Miller and her son. Thus, Brown also failed to offer sufficient evidence to create a jury question as to the fourth element of the *Perrin* test.

III.

Accordingly, the judgment of district court is

*AFFIRMED.*

(FN*) Although we recognize the theoretical possibility that Brown and Swanigan could have

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

EXHIBIT D

crossed paths somewhere outside the apartment after Swanigan had left and before Brown had arrived, e.g., on the stoop or in the street, Brown has failed to offer even a scintilla of evidence to support a finding that such a scenario occurred.

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

**EXHIBIT D**