UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

FILED

MAR 3 1 2005

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA,
        Respondent,

v.

                              Civil Action No.  3:04-1001
                              (Criminal No. 3:02-00231)

JOHN DAVID MOONEY,
        Movant.

## UNITED STATES RESPONSE TO MOVANT JOHN DAVID MOONEY'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

Comes now the United States of America, by counsel, Michael L. Keller, Assistant United States Attorney for the Southern District of West Virginia and opposes the Motion to Vacate Sentence filed on behalf of John David Mooney.  For the reasons herein provided, the United States respectfully submits that movant has failed to demonstrate that his otherwise voluntary guilty plea was obtained as a result of ineffective assistance of counsel.

### BACKGROUND

Movant John David Mooney (hereinafter "defendant") is a multiple convicted felon.  In 1982, he was convicted of burglary, in 1993, he was convicted of non-aggravated robbery, and in 1989, he was convicted of aggravated robbery.  These felony convictions made defendant a prohibited person pursuant to 18 U.S.C. § 922(g)(1) and, therefore, legally barred from possessing a firearm.

On August 4, 2002, at approximately 2:00 a.m., defendant entered the home of his ex-wife.  Although defendant has contended

that he was residing at that home with his ex-wife's permission, in statements to the police, she denied that assertion and contended that defendant had entered the residence without her authorization. In any event, once in the home that night, defendant engaged in a physical confrontation with his ex-wife. At some point during the altercation, defendant took possession of a firearm belonging to his ex-wife.

Defendant subsequently left the house with the firearm still in his possession. He walked to a local bar where he was occasionally employed.

Acting in response to a 911 call from defendant's ex-wife, the police also went to the bar in search of defendant. They located defendant who was, at that time, still in possession of the pistol that he had taken from his ex-wife's home.

On October 8, 2002, defendant was indicted by a federal grand jury sitting in Huntington, West Virginia. The indictment brought charged him with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm).

On February 16, 2003, defendant appeared before United States District Judge Robert C. Chambers for the purpose of entering his guilty plea. See, Plea Transcript, attached hereto as Exhibit A. During that plea hearing, the district court advised defendant that if he qualified as an armed career criminal, he would face a mandatory minimum of a fifteen year prison sentence and a maximum

term of life imprisonment. Defendant acknowledged that he understood both the potential minimum and maximum penalties. Also during the plea hearing, defendant testified regarding the factual basis supporting his plea. He admitted that he had, in fact, possessed the firearm on August 4, 2002. The district court then called upon the United States to present evidence supporting the factual basis. In response to that directive, the United States presented the testimony of Special Agent Todd Willard of the Bureau of Alcohol, Tobacco and Firearms. The court also inquired of defendant's counsel, Michael Frazier, Esquire, whether he was satisfied that if the case were to go to trial, there would be no meritorious legal defense that could be offered on defendant's behalf. In response to that inquiry, Mr. Frazier indicated that he was satisfied that there was no viable defense available. Accordingly, the court accepted the plea and directed the preparation of a Presentence Report in anticipation of sentencing.

Between the time of the plea hearing and the scheduled sentencing hearing, a probation officer prepared a Presentence Investigation Report. In that Report, the probation officer determined that defendant did, in fact, qualify as an armed career criminal.

On May 12, 2003, defendant appeared before the court for the purposes of sentencing. At that time, he attempted to withdraw his guilty plea. After reviewing the relevant factors with regard to

3

the withdrawal of a guilty plea as set forth by the United States Court of Appeals in United States v. Moore, 931 F. 2d 245 (4th Cir.), cert. denied, 502 U.S. 857 (1991), the court denied defendant's motion.   In denying defendant's motion, the court concluded, *inter alia,* that defendant could not make a credible showing that he was innocent of the charges to which he had pled guilty.   See, Sentencing Transcript, attached hereto as Exhibit B.

After rejecting the attempt to withdraw the plea, the court concluded that defendant did satisfy the standard for qualifying as an armed career offender.   The resulting criminal history category of VI, applicable to such a status, produced a Guideline range of 180 to 210 months.   The district court sentenced defendant at the bottom of the Guidelines to a term of 180 months imprisonment.

Following the imposition of sentence, defendant pursued a direct appeal with the United States Court of Appeals for the Fourth Circuit contending that the district court had abused its discretion in refusing to allow him to withdraw the plea.   That contention was rejected by the United States Court of Appeals for the Fourth Circuit.   See, United States v. Mooney, No. 03-4433 (4th Cir. Mar. 22, 2004) (unpublished) (copy enclosed).

On September 16, 2004, defendant filed the instant Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255.   As grounds for relief, defendant contends that his attorney, Michael Frazier, Esquire, provided constitutionally defective representation in the

4

course of the plea negotiations.  Citing both <u>Strickland v. United States</u>, 466 U.S. 668 (1984) and <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), defendant contends that, as a consequence of Mr. Frazier's erroneous advice, he entered into a guilty plea that was involuntary inasmuch as he did have meritorious legal defense to the charge of felon in possession.  The United States respectfully submits that defendant's allegations do not withstand scrutiny.

<b><u>ARGUMENT</u></b>

**DEFENDANT HAS FAILED TO DEMONSTRATE THAT THE ADVICE OF HIS ATTORNEY WITH REGARD TO THE GUILTY PLEA WAS CONSTITUTIONALLY DEFECTIVE.**

Under the standards for assessing ineffective assistance of counsel, as articulated by the United States Supreme Court in <u>Strickland v. Washington</u>, a movant seeking to assert defective representation must demonstrate a departure from reasonable competence by an attorney that results in prejudice to the client.  With regard to a guilty plea, the movant must demonstrate that absent the unprofessional and prejudicial conduct of the attorney, he would not have pled guilty, but rather would have insisted upon proceeding to trial.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985).  In the instant Motion to Vacate Sentence, defendant argues that when Mr. Frazier indicated that there was no meritorious legal defense to the charge of felon in possession brought against him, his attorney failed to recognize the affirmative defense of

5

justification as recognized in <u>United States v. Crittendon</u>, 883 F. 2d 326 (4th Cir. 1989) and <u>United States v. Perrin</u>, 45 F. 3d 869, 873-74 (4th Cir. 1995).  Defendant essentially argues that he could have satisfied the test articulated by the court in <u>Crittendon</u> by demonstrating that, at the time he possessed the firearm, he was under unlawful and present threat of death or serious bodily injury, that he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct, that he had no reasonable legal alternative to both the criminal act and the avoidance of the threat, and that there was a direct causal relationship between the criminal action and the avoidance of the threat and harm.  In essence, defendant contends that he had to take the gun away from his ex-wife to avoid the harm with which he was being threatened and that his possession was, therefore, within the bounds of the justification defense.  Defendant further contends that by failing to recognize that fact, Mr. Frazier provided defective representation.

In essence, the district court has already considered the substance of the claim defendant has raised as grounds for collateral relief.  In rejecting defendant's attempt to withdraw his guilty plea, the court noted that if defendant's ex-wife had been brandishing a gun or threatening him with it and he had taken the gun from her and thrown it in the garbage, there might be a defense to the charge.  The court recognized, however, that even if

6

defendant had a good reason to seize the gun, by walking out of the house and going to another location with the gun in his possession, he had broken the link between the purported necessity defense and his continued possession.

In this case, the record is clear.  Defendant took the gun, belonging to his ex-wife, into his possession.  Whether that was a result of a threat by his ex-wife or not, defendant clearly had an opportunity at that time to call the police or otherwise place the gun outside his ex-wife's control without continuing to carry it in the fashion that he did.  By leaving the residence, walking to another location, without ever calling the police, defendant possessed the firearm in a manner that was inconsistent with the factors articulated by the Fourth Circuit in Crittendon and Perrin. Mr. Frazier personally recognized that fact when he indicated that defendant did not have a meritorious legal defense.  The district court, implicitly agreed when the court noted that it would not have allowed defendant to argue the justification defense to the jury in light of the evidence against him.

It has always been apparent in this case that defendant was unhappy about his status as an armed career offender. Nevertheless, the underlying conviction was clearly appropriate, the guilty plea was voluntarily entered and defendant cannot escape the consequences of his conduct by a meritless assertion of ineffective assistance of counsel.

7

## CONCLUSION

For the foregoing reasons, the Motion to Vacate Sentence filed on behalf of John David Mooney should be denied.

Respectfully submitted,

KASEY WARNER
United States Attorney

By: _____
MICHAEL L. KELLER
Assistant United States Attorney

8

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing "UNITED STATES RESPONSE TO MOVANT JOHN DAVID MOONEY'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255," has been made on the following by mailing a true copy thereof this _30_ day of March, 2005, addressed as follows:

> John David Mooney
> Inmate Number 04890-088
> F.C.I. Gilmer
> Post Office Box 6000
> Glenville, West Virginia 26351

MICHAEL L. KELLER
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON


UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 3:02-00231

JOHN DAVID MOONEY,
                                      Huntington, West Virginia
            Defendant.                February 26, 2003



TRANSCRIPT OF GUILTY PLEA
BEFORE THE HONORABLE ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Government:          **MILLER A. BUSHONG, III, ESQ.**
                             Assistant United States Attorney
                             P. O. Box 1713
                             Charleston, WV  25326

For the Defendant:           **W. MICHAEL FRAZIER, ESQ.**
                             FRAZIER & FRAZIER
                             P. O. Box 2808
                             Huntington, WV  25309

Probation Officer:           LARRY CRAWFORD

Defendant Present in Person.

Court Reporter:              ---TERESA M. RUFFNER, RPR
                             P. O. Box 1570
                             Huntington, WV  25716
                             (304) 528-7583

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.



GOVERNMENT
EXHIBIT

CASE
NO. 3:04-1001

EXHIBIT
NO. A

1    Wednesday, February 26, 2003 at 10:35 a.m. in open court

2            THE COURT:  Are we ready to proceed?

3            MR. FRAZIER:  Yes, Your Honor.

4            MR. BUSHONG:  The United States is ready.

5            THE COURT:  All right.  Mr. Frazier, Mr. Mooney,

6    would you please stand.

7        Mr. Frazier, I understand that Mr. Mooney has decided to

8    plead guilty to the count in the indictment; is that correct?

9            MR. FRAZIER:  That's correct, Your Honor.

10           THE COURT:  All right.  Mr. Mooney, I have to ask

11   you a number of questions in this proceeding, so my clerk is

12   going to swear you in.

13           CLERK JUSTICE:  Please raise your right hand.

14       (The defendant was duly sworn.)

15           THE COURT:  All right.  Mr. Mooney, do you

16   understand you're now under oath and if you answer any of my

17   questions falsely, you could be prosecuted for perjury or for

18   making a false statement?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Would you state your full name.

21           THE DEFENDANT:  John David Mooney.

22           THE COURT:  How old are you, Mr. Mooney?

23           THE DEFENDANT:  I'll be 48 April 10th.

24           THE COURT:  How much education have you had?

25           THE DEFENDANT:  Ninth grade.

**12**

1      THE COURT:  Can you read and write?

2      THE DEFENDANT:  Yes, sir.

3      THE COURT:  Have you recently been under the care of

4  any doctor or psychiatrist or other medical professional for

5  any serious physical or emotional illness?

6      (The defendant and Mr. Frazier conferred privately off

7  the record.)

8      THE DEFENDANT:  No, sir.

9      THE COURT:  Are you currently using any type of

10  medication, controlled substances or alcohol?

11      THE DEFENDANT:  No, sir.

12      THE COURT:  Are you able to understand fully what's

13  going on here in court today?

14      THE DEFENDANT:  I believe so.

15      THE COURT:  Mr. Frazier, do you have any reason to

16  question the competence of your client?

17      MR. FRAZIER:  No, sir.

18      THE COURT:  All right.  Mr. Mooney, I find you're

19  competent and capable of entering an informed plea.

20      Have you had enough time to discuss this case with your

21  attorney?

22      THE DEFENDANT:  Yes, sir.

23      THE COURT:  Has he been able to answer your

24  questions about how you should proceed?

25      THE DEFENDANT:  Yes, sir.

1          THE COURT:  I'm going to need you to speak up just a

2    little bit so I can hear you.

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Are you completely satisfied with the

5    legal advice Mr. Frazier has given you?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Mr. Frazier, has Mr. Mooney been

8    cooperative with you?

9          MR. FRAZIER:  Very much so, Your Honor.

10          THE COURT:  Have you had enough time to investigate

11   the case and discuss it with him?

12          MR. FRAZIER:  Yes, sir.

13          THE COURT:  All right.  I understand there's a

14   proposed plea agreement.

15       Mr. Frazier, would you summarize the provisions of the

16   plea agreement in each paragraph.

17          MR. FRAZIER:  Your Honor, we're going to enter a

18   plea that he's charged in a one-count indictment, a felon in

19   possession.

20       Paragraph 2 states that he'll plead guilty to that

21   violation as charged in the indictment.

22       Paragraph 3, the maximum potential penalty that he will

23   be exposed to by virtue of his plea is imprisonment for a

24   period of ten years, a fine of $250,000 or twice the gross

25   pecuniary gain, whichever is greater, a term of supervised

1    with your lawyer before you signed this plea agreement?

2               THE DEFENDANT:  Yes, sir.

3               THE COURT:  Do you want me to accept the plea

4    agreement?

5               THE DEFENDANT:  Yes.

6               THE COURT:  Well, I'm going to defer accepting the

7    plea agreement until I can review a presentence report on you,

8    Mr. Mooney, but the original plea agreement may be filed as a

9    part of the record in this case.

10        Mr. Mooney, have you read the indictment returned against

11   you?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  I'm now going to --

14              MR. BUSHONG:  Sorry, Your Honor.

15              THE COURT:  Go ahead.

16        (Mr. Bushong and Clerk Justice conferred privately off

17   the record.)

18              THE COURT:  I'm now going to read to you the

19   indictment in this case and then ask for your plea.

20        This is styled United States of America versus John David

21   Mooney.  Indictment.  The Grand Jury Charges:

22        1.  On or about August 4, 2002, at or near Huntington,

23   Cabell County, West Virginia, and within the Southern District

24   of West Virginia, defendant John David Mooney did knowingly

25   possess a firearm, that is, a Charter Arms, model Off Duty,

1    unless it's in excess of the statutory maximum.

2         At final disposition it's agreed that you have the sole

3    discretion now to sentence this man and the Government is not

4    going to make any recommendation, but they do reserve the

5    right to inform you as to the relevant facts and conduct, to

6    address you with respect to the nature and seriousness of the

7    offense, to respond to any questions the Court might raise, to

8    correct any inaccuracies or inadequacies in the presentence

9    report, to respond to any statements that I might make or that

10   Mr. Mooney might make on his own behalf, to advise the Court

11   of Mr. Mooney's cooperation and to address the Court regarding

12   the issue of his acceptance of responsibility.

13        In paragraph 10 it's agreed that if either party violates

14   the terms of this agreement, either side has the right to void

15   it.  And if the Court refuses to accept this agreement, it

16   shall be void.

17        And that pretty much summarizes the entire plea

18   agreement.

19             THE COURT:  All right.  Is that a fair summary of

20   the agreement, Mr. Bushong?

21             MR. BUSHONG:  Yes, Your Honor.

22             THE COURT:  Mr. Mooney, do you understand what this

23   agreement does and what it requires of you?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Did you go over each of these provisions

**16**

1    release of three years, a special assessment of a hundred

2    dollars, and an order of restitution pursuant to U. S. Code

3    Section 18 3663.

4        Alternatively, if the Court finds that he is an armed

5    career criminal, his potential in this case, the maximum

6    statutory penalty will be 15 years' imprisonment, up to life,

7    a fine of $250,000 or twice the gross pecuniary gain, a term

8    of supervised release of five years, the hundred dollar

9    special assessment, and the order of restitution.

10        In addition, the special assessment, he submitted

11    certified financial statements -- I have those here; they

12    haven't been submitted yet -- reflecting that he's without

13    sufficient funds to pay the special assessment.  And if

14    incarcerated, he agrees to join the Inmate Financial

15    Responsibility Program and use his earnings to pay the special

16    assessment.

17        Paragraph 5 says he'll be completely forthright and

18    truthful.

19        Paragraph 6 gives him use immunity so that anything he

20    says at this plea hearing or any debriefing will not be used

21    against him in any further prosecution unless the Government

22    has evidence outside of what he tells them,--which is contained

23    in the seventh paragraph, the limitations on immunity.

24        Appeal of the fine.  Both parties agree they are not

25    going to seek appellate review of any order imposing a fine

**17**

1    .38 caliber revolver, in and affecting interstate commerce.

2        2.   At the time defendant John David Mooney possessed the

3    aforesaid firearm, he had been convicted of crimes punishable

4    by imprisonment for a term exceeding one year, as defined in

5    18, United States Code, Section 921(a)(20), that is,

6            a.   Convicted on or about May 13, 1982 in the Court

7    of Common Pleas, Lawrence County, Ohio, of burglary, in

8    violation of Ohio Revised Code, Section 2911.12;

9            b.   Convicted on or about June 3, 1983 in the

10   Circuit Court of Cabell County, West Virginia, of attempt to

11   commit non-aggravated robbery, in violation of West Virginia

12   Code, Section 62-2-12; and

13           c.   Convicted on or about June 12, 1989 in the

14   Circuit Court of Cabell County, West Virginia, of aggravated

15   robbery, in violation of West Virginia Code, Section 61-2-12.

16       In violation of Title 18, United States Code, Sections

17   922(g)(1) and 924(a)(2).

18       All right.  Mr. Mooney, how do you plead to that charge?

19           THE DEFENDANT:  Guilty, sir.

20           THE COURT:  All right.  Before I accept your guilty

21   plea, I want to go over several things with you.

22       First, I want to make sure there's a factual basis for

23   your guilty plea.  Then I want to make sure that you

24   understand the nature of the charge against you and the

25   consequences of pleading guilty to that charge, that you

**18**

1    understand the constitutional and other legal rights you give

2    up when you plead guilty and that you're pleading guilty

3    voluntarily.

4         First, let's go over the charge in more detail.  You're

5    charged with violating Section 922(g)(1).  That section

6    states, in part, it shall be unlawful for any person who has

7    been convicted in any court of a crime punishable by

8    imprisonment for a term exceeding one year knowingly to

9    possess in or affecting interstate commerce any firearm or

10   ammunition.

11        Section 924(a)(2) provides, whoever knowingly violates

12   subsection (g) of 922 shall be guilty of a crime against the

13   United States.

14        Now, Mr. Mooney, if the Government had to go to trial in

15   this case, the Government would have to prove the following

16   elements against you beyond a reasonable doubt:

17        First, that you have been convicted in any court of a

18   crime punishable by imprisonment for a term exceeding one

19   year, and two, you knowingly possessed the firearm described

20   in the indictment, and three, such possession was in or

·21   affecting interstate commerce.

22        Now, you were previously convicted of burglary in

23   violation of Ohio Revised Code, Section 2991.12, of attempt to

24   commit non-aggravated robbery in West Virginia in violation of

25   61-2-12, and aggravated robbery in violation of the same

**19**

Case 3:02-cr-00231   Document 67   Filed 03/31/05   Page 19 of 73 PageID #: 319

10

body1   statute in West Virginia.  All of these are crimes punishable

2   by imprisonment for a term exceeding one year.

3        Now, a "firearm" means any weapon which will or is

4   designed to or may readily be converted to expel a projectile

5   by the action of an explosive, the frame or receiver of such

6   weapon, any firearm muffler or silencer or any other

7   destructive device.  The term "firearm" does not include an

8   antique firearm.

9        "To possess" means to exercise authority, control or

10   dominion over something.

11        An act is done "knowingly" if it's done voluntarily and

12   intentionally and not because of a mistake or accident or some

13   innocent reason.

14        Last, "in or affecting interstate commerce" means

15   commerce between any place in one state and any place outside

16   of that state.

17        Now, considering this explanation, Mr. Mooney, do you

18   believe you're guilty of the charge contained in this

19   indictment?

20             THE DEFENDANT:  I did have a gun.

21             THE COURT:  All right.  Do you believe you're guilty

22   of this charge?

23        If you don't believe you're guilty, now is the time to

24   say so for sure.

25             THE DEFENDANT:  The circumstances surrounding it --

**20**

1           MR. FRAZIER:  I know what he's hung up on, if you'll

2    give me just a moment.

3           THE COURT:  Go ahead.

4       (Mr. Frazier and the defendant conferred privately off

5    the record.)

6           THE COURT:  All right.  Mr. Mooney, do you believe

7    you're guilty of this charge?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  Tell me what you did that makes you

10   guilty.

11          THE DEFENDANT:  I had the gun.  I mean --

12          THE COURT:  Speak up.  I can't hear you very well.

13          THE DEFENDANT:  I had the gun.

14          THE COURT:  Well, you say you had the gun.  Are you

15   talking about this Charter Arms .38 caliber revolver?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  What do you mean you had it?

18   Were you holding it?

19      (Mr. Frazier and the defendant conferred privately off

20   the record.)

21          THE COURT:  Just tell me.  I don't know what

22   happened.  I don't know anything about your case --

23          THE DEFENDANT:  I took the gun to give it to the

24   Huntington Police Department, and the Huntington Police

25   Department took it away from me and charged me with it.

1          THE COURT:  All right.  What do you mean you took

2     the gun?

3          THE DEFENDANT:  My wife was drinking the night that

4     she had the gun out and I was scared.  I took it to get it out

5     of the house for my own safety.

6          THE COURT:  All right.  So your wife was drinking

7     and she had this gun?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And you took it from her?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And you then tried to take it to the

12     Huntington Police Department?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And they arrested you for possessing the

15     gun at that time?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Mr. Frazier --

18          MR. FRAZIER:  Well, Your Honor, I think where the

19     confusion comes in, he wasn't -- he didn't, like, take it to

20     the Huntington Police Department and say, "Here's a gun" and

21     they arrested him.

22          His intention was to turn the gun over.  Unfortunately,

23     before he got that opportunity, he stopped at a bar and his

24     wife had called 911 and said, you know, "My husband has got

25     this gun," and everything went to hell in a hand basket,

**22**

1    basically.  But he had -- the police didn't arrest him while

2    he was turning it in is what I understand.

3            THE COURT:  All right.  Well, tell me how this

4    happened, Mr. Mooney.

5            THE DEFENDANT:  Well --

6            THE COURT:  You were what, at your house with your

7    wife and she's drinking?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  And --

10           THE DEFENDANT:  About 2:00 in the morning.  And she

11   pulled the gun out.  She had pulled it out previously before,

12   and I was scared of it.  So I took it away from her.

13       I called a guy that has a bar up here that's a friend of

14   mine, and I told him that I was coming up there.  And she

15   heard it and she called the police and had them there.

16           THE COURT:  All right.  So you took the gun with you

17   and went to this bar?

18           THE DEFENDANT:  The bar was closed.  I mean --

19           THE COURT:  Oh, all right.  So you went to --

20           THE DEFENDANT:  That's where I -- yeah, I was going

21   to call the Huntington Police as soon as I got there.  When I

22   got there, the Huntington Police was waiting in the lot.

23           THE COURT:  And where did you have the gun with you

24   at that time?

25           THE DEFENDANT:  In my pocket.

1          THE COURT:  All right.  And you're saying as you

2    pulled into this parking lot where this bar was, the police

3    were already there waiting?

4          THE DEFENDANT:  I walked there.

5          THE COURT:  You walked there?

6          THE DEFENDANT:  Yeah.  It's just a few blocks up the

7    street from my home.

8          THE COURT:  All right.  So they arrested you at that

9    time and you had the gun --

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  -- with you.  Did this happen on or

12   about August 4, 2002?

13         THE DEFENDANT:  I believe so, sir.

14         THE COURT:  All right.  And were you here in

15   Huntington, Cabell County, West Virginia, when this occurred?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  All right.  You can sit down for a few

18   minutes.

19      Mr. Bushong, do you want to offer testimony to show what

20   the Government could prove?

21         MR. BUSHONG:  Your Honor, the United States calls

22   Special Agent Todd Willard.

23         TODD WILLARD, GOVERNMENT'S WITNESS, SWORN

24                   DIRECT EXAMINATION

25   BY MR. BUSHONG:

Willard - Direct

1   Q.   Special Agent Willard, you're employed by ATF?

2   A.   Yes, sir, that's correct.

3   Q.   You've been with ATF for how long?

4   A.   Over 15 years.

5   Q.   Did you have a role in investigating the case of United

6   States versus John David Mooney?

7   A.   Yes, sir, I did.

8   Q.   You're familiar with the case?

9   A.   Yes, sir, I am.

10  Q.   He was arrested on August 4, 2002 in Huntington; is that

11  correct?

12  A.   That is correct.

13  Q.   What location was he arrested in?

14  A.   He was arrested in Whisman's Bar down on the West End of

15  Huntington.

16  Q.   Who arrested him?  What agency?

17  A.   The Huntington Police Department.

18  Q.   The Huntington Police Department arrived on the scene of

19  that bar in the early morning hours of August 4, 2002.  Why is

20  that?

21  A.   The Cabell County 911 had received a call.  The caller --

22  whoever called was not actually speaking directly to 911, but

23  the phone line was open.  The 911 operator could hear -- and

24  it's recorded; we have the tape -- a male and female arguing.

25       The female is trying to get the male to give her the

Willard - Direct

1   firearm.   The male replies, "You're not going to pull the gun

2   on me anymore."   The female says -- asks him if he wants to go

3   to jail.   The male says no, he's not afraid of going to jail.

4        She keeps trying to get him to give the firearm.   The

5   phone cuts off.   911 calls the number back.   They're still

6   arguing.   They hear the lady say, "John, give me the gun."

7        He basically just leaves the residence.   The line is cut

8   off again.   Then she calls back.   Miss McCloud, who is

9   Mr. Mooney's ex-wife, says that her ex-husband broke into her

10  house, gives a description of what he's wearing and says that

11  he has a gun and that he's on his way to Whisman's.

12       She gives his description, tells that he doesn't have a

13  shirt, because she had ripped his shirt off.

14       The officer, Sexton, who was at the complainant's house,

15  Miss McCloud's house, advises other officers -- three other

16  officers, actually -- who went to Whisman's Bar.   Whisman's

17  was closed.   They pecked on the door, got Mr. Mooney out, and

18  he had the firearm in his pants pocket, the Charter Arms.

19  Q.   So the person you were referring to on the 911 call when

20  you said "he" and "she" is, in effect, what --

21  A.   Yes, Miss McCloud --

22  Q.   -- the defendant's ex-wife?   Did you interview her?

23  A.   Yes, I did.

24  Q.   Does she claim that the defendant broke into her home in

25  the early morning hours of August 4, 2002 --

Willard - Direct

1   A.   Yes.

2   Q.   -- and removed her firearm from the house?

3   A.   Yes.  She gives a little different story than the 911

4   tape, but she says that he did take the firearm and it was --

5   but that he did come into her house and it wasn't where -- she

6   said he woke her up from a sound sleep at 2:00 in the morning,

7   so --

8   Q.   All right.  The firearm was seized by the Huntington

9   Police Department.  Did you have an opportunity to test-fire

10  it?

11  A.   Yes, sir, I test-fired the Charter Arms revolver and it

12  was found to function as designed.

13  Q.   When it was seized, was it loaded?  Do you remember?

14  A.   No, sir, it was not.

15  Q.   All right.  And where was that firearm manufactured?

16  A.   That was manufactured in the State of Connecticut.

17  Q.   So it necessarily traveled in interstate commerce?

18  A.   Yes, sir.  It was recovered in West Virginia.

19  Q.   The defendant has been convicted of three felonies.  In

20  1982 he was convicted in Ohio of burglary.  Is that correct?

21  A.   That's correct.

22  Q.   In 1983 he was convicted in West Virginia of attempt to

23  commit non-aggravated robbery?

24  A.   Yes, sir.

25  Q.   And in 1989 he was convicted in West Virginia of

Willard - Direct/Cross

1   aggravated robbery?

2   A.   That is correct.

3   Q.   Have you researched as to whether the defendant applied

4   to have his civil rights restored in either Ohio or West

5   Virginia?

6   A.   Yes, sir, I have, and he has not been given his rights to

7   possess a firearm.

8           MR. BUSHONG:   That's all I have, Your Honor.

9           THE COURT:   Any questions?

10                       CROSS EXAMINATION

11   BY MR. FRAZIER:

12   Q.   Officer Willard, Mr. Mooney did voluntarily turn this gun

13   over at the bar, correct?   I mean they didn't have to go in

14   and take it from him.   He handed it over and admitted he had

15   the gun, correct?

16   A.   When I interviewed the sergeant, the sergeant said that

17   when they went into Whisman's, the door was actually locked,

18   and they pecked on the door and that they unlocked the door.

19   Mr. Mooney came out.   And I guess he really didn't have a

20   chance to do anything.   You know, they got him.   Since he had

21   the gun, they patted him down and found the firearm on him.

22   But he didn't resist, no, sir.

23           MR. FRAZIER:   That's all.

24           THE COURT:   All right.   You may step down, Agent.

25   Thank you.

**28**

1        All right.  Mr. Mooney, Mr. Frazier, if you'd again

2   please stand.

3        All right.  Mr. Mooney, you heard that testimony, didn't

4   you?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  I take it that you dispute what your

7   ex-wife said started this argument between the two of you; is

8   that right?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  But you admit that you did get the gun

11  from her and that you kept the gun in your possession when you

12  went to Whisman's Bar and you still had it in your possession

13  when you were arrested?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  All right.  And you agree that you have

16  been convicted of these three charges outlined in the

17  indictment and that your rights have never been restored?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  All right.  Mr. Frazier, are you

20  satisfied that if this case went to trial, there would be no

21  meritorious legal defense to this charge?

22             MR. FRAZIER:  That's correct, Your Honor.

23             THE COURT:  Are you satisfied that Mr. Mooney's

24  constitutional and other rights have been observed fully?

25             MR. FRAZIER:  Yes, sir.

**29**

1      THE COURT:  All right.  Mr. Mooney, I find that

2  there's a sufficient factual basis for your guilty plea.

3      Now I want to go over the penalties that you'll be

4  exposed to.

5      First, do you understand you're pleading guilty to a

6  felony offense and if I accept your plea, you'll be adjudged

7  guilty of that felony?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  Do you understand that that judgment may

10  deprive you of valuable civil rights, such as your right to

11  vote, your right to hold public office, your right to serve on

12  a jury, and your right to possess any kind of firearm or gun?

13      THE DEFENDANT:  Yes, sir.

14      THE COURT:  Now, do you also understand that if you

15  qualify as an armed career criminal pursuant to 18, United

16  States Code, Section 924(e) -- and that's all based upon your

17  criminal history, the actual convictions that you have -- that

18  you expose yourself to imprisonment for a period of at least

19  15 years and maybe up to life by entering in this plea

20  agreement?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  Do you understand that even if you're

23  not found to be an armed career criminal, that you still

24  expose yourself to a maximum penalty of ten years'

25  imprisonment under this plea agreement?

**30**

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that in addition to

3     this, you'll be subject to a supervised release term of as

4     much as five years if you're found to be an armed career

5     criminal or as much as three years if you're not an armed

6     career criminal?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand that supervised

9     release means after imprisonment, you would be supervised by

10    the probation office under conditions set by the Court?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And do you understand if you violate the

13    terms of supervised release, the Court can revoke it and send

14    you back to prison as a result?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you understand you could also be

17    required to pay a fine of up to $250,000 or twice the amount

18    of gain or loss resulting from your conduct?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you understand you'd also be required

21    to pay the $100 special assessment for having been convicted

22    of a felony offense?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you understand in the plea agreement,

25    you've agreed to pay that special assessment by participating

1    in the Inmate Financial Responsibility Program?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Do you understand that in addition to

4    this, you may also be required to make restitution if there

5    are any crime victims?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Have you and your lawyer discussed the

8    sentencing guidelines and how they might apply to your case?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you understand that the Court cannot

11   determine the guideline range for your case until this

12   presentence report is done and both you and the Government

13   have a chance to look at it and challenge it if you think it's

14   wrong?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you understand that the sentence I

17   could impose may be different from any estimate your lawyer

18   has given you?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Do you understand that although I have

21   to consider these sentencing guidelines, I do have authority

22   in some cases to impose a sentence that's more severe and in

23   other cases less severe than the guidelines would require?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Do you understand that parole has been

**32**

1   abolished and you will not be released on parole if you're

2   sent to prison?

3           (The defendant and Mr. Frazier conferred privately off

4   the record.)

5                   THE DEFENDANT:  Yes, sir.

6                   THE COURT:  Do you understand that even if you do

7   not like the sentence I impose upon you, you will still be

8   bound by this guilty plea and you will have no right to

9   withdraw it?

10                  THE DEFENDANT:  Yes, sir.

11                  THE COURT:  Do you understand that you may have the

12  right to appeal your conviction if you believe your guilty

13  plea was unlawful or involuntary or if there's some other

14  fundamental defect in these proceedings that you haven't

15  waived by pleading guilty?

16                  THE DEFENDANT:  Yes, sir.

17                  THE COURT:  Do you understand that both you and the

18  Government may have the right to appeal the sentence I impose?

19                  THE DEFENDANT:  Yes, sir.

20                  THE COURT:  In the plea agreement, you agreed to

21  give up your right to appeal a fine unless the amount of the

22  fine is above the guideline range.  Generally, you're bound by

23  such waivers, but if you don't believe you are, you'd have to

24  present that theory to an appeals court.  Do you understand

25  that?

**33**

```
 1              THE DEFENDANT:  Yes, sir.
 2              THE COURT:  Do you understand that with few
 3    exceptions, any notice of appeal must be filed within ten days
 4    of judgment being entered in your case?
 5              THE DEFENDANT:  Yes, sir.
 6              THE COURT:  Mr. Mooney, I find that you understand
 7    the nature of the charge and the consequences of a guilty
 8    plea.
 9         Now I want to go over the constitutional and other legal
10    rights you give up when you plead guilty.
11         Do you understand you have a right to plead not guilty to
12    this charge?
13              THE DEFENDANT:  Yes, sir.
14              THE COURT:  Do you understand that by pleading
15    guilty, you're giving up your right to a speedy and public
16    trial by a jury?
17              THE DEFENDANT:  Yes, sir.
18              THE COURT:  Do you understand that by pleading
19    guilty, you're giving up your right to force the Government to
20    produce witnesses and evidence against you?
21              THE DEFENDANT:  Yes, sir.
22              THE COURT:  Do you understand that you would be
23    presumed innocent until the Government presented enough
24    evidence to convince a judge and a jury beyond a reasonable
25    doubt that you were guilty?
```

**34**

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that when you admit

3     your guilt, as you have here, you relieve the Government of

4     the burden of proving your guilt at a trial?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you understand that you would have

7     the right to the assistance of your lawyer at trial?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Do you understand that you and your

10    lawyer could confront the witnesses and he could cross-examine

11    them to test the truth of what they said?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you understand that by pleading

14    guilty, you give up that right?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you understand that if you desired to

17    go to trial and wanted to call witnesses, you'd be entitled to

18    have the Marshal's Office bring witnesses to court under

19    subpoena?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  And do you understand that by pleading

22    guilty, you're giving up your right to call witnesses-except

23    for the limited purposes of a sentencing hearing?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you understand you would have the

**35**

1    right to go to trial and remain silent?  That is, you wouldn't

2    have to take the witness stand or even present any evidence if

3    you didn't want to.

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you understand that I would instruct

6    the jury they could not convict you just because you exercised

7    your constitutional right and that they could convict you only

8    if the Government proved its case beyond a reasonable doubt?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Mr. Mooney, I find you understand the

11   constitutional and other legal rights you're giving up by

12   pleading guilty.

13        Knowing all this, do you still want to plead guilty at

14   this time?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Has anyone forced you or threatened you

17   or coerced you or talked you into pleading guilty against your

18   will?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Are you acting voluntarily and of your

21   own free will in entering this guilty plea?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Is pleading guilty your own idea?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Has anyone promised you anything or told

1   you something different from what we've discussed today to get

2   you to plead guilty?

3         THE DEFENDANT:  No, sir.

4         THE COURT:  All right.  I find your guilty plea is

5   voluntary.

6       Mr. Mooney, do you have any questions or second thoughts

7   about pleading guilty?

8         THE DEFENDANT:  No, sir.

9         THE COURT:  If not, I'm going to ask that you step

10  up here to the clerk's desk and sign a plea of guilty.

11        CLERK JUSTICE:  "In the presence of Michael Frazier,

12  my counsel, who has fully explained the charge contained in

13  the indictment against me, and having received a copy of the

14  indictment before being called upon to plead, I hereby plead

15  guilty to the charge contained in the indictment."

16      (The written plea of guilty was executed.)

17        THE COURT:  All right.  The record may reflect

18  that Mr. Mooney has executed the plea of guilty, his lawyer

19  signed it, and it's been tendered to the clerk for filing.

20      In the case of United States of America versus John David

21  Mooney, I find that Mr. Mooney is fully competent and capable

22  of entering an informed plea, there's a sufficient factual

23  basis for his guilty plea, he understands the nature of the

24  charge and the consequence of a guilty plea, he understands

25  the constitutional and other legal rights he's giving up

1   because of the plea, and his plea is voluntary.

2       Mr. Mooney, I've deferred accepting the plea agreement

3   until I can review a presentence report on you, but I do

4   accept your guilty plea.  You are now adjudged guilty and

5   stand convicted of violating 18, United States Code, Section

6   922(g)(1) and 924(a)(2).

7       I direct the probation office to conduct a presentence

8   investigation, draft a report and disclose it to the

9   Government and the defendant by April 7.  Counsel may make

10  objections no later than April 21.  The final report will be

11  due to the Court by May 5.  I'm going to set this case down

12  for sentencing on May 12, 2003 at 10:30 a.m.

13      The defendant is currently detained.  Does the defendant

14  want to offer any testimony or argument about whether that

15  should continue?

16          MR. FRAZIER:  No, Your Honor.

17          THE COURT:  All right.  The defendant will remain in

18  custody pending sentencing.

19      Is there anything else the Court need address in this

20  case?

21          MR. FRAZIER:  No, sir.

22          MR. BUSHONG:  No, Your Honor.

23          THE COURT:  If not, we stand adjourned.

24      (Hearing concluded at 11:02 a.m.)

25      I, Teresa M. Ruffner, certify that the foregoing is a

**38**

1   correct transcript from the record of proceedings in the

2   above-entitled matter.

3

4   Teresa M. Ruffner          June 24, 2003

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON


UNITED STATES OF AMERICA

v.                                          CRIMINAL NO. 3:02-00231

JOHN DAVID MOONEY,
                                            Huntington, West Virginia
            Defendant.                      May 12, 2003



TRANSCRIPT OF MOTION TO WITHDRAW GUILTY PLEA AND SENTENCING
BEFORE THE HONORABLE ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Government:          **MILLER A. BUSHONG, III, ESQ.**
                            Assistant United States Attorney
                            P. O. Box 1713
                            Charleston, WV  25326


For the Defendant:          **W. MICHAEL FRAZIER, ESQ.**
                            FRAZIER & FRAZIER
                            P. O. Box 2808
                            Huntington, WV  25309

Defendant Present in Person.

Court Reporter:             TERESA M. RUFFNER, RPR
                            P. O. Box 1570
                            Huntington, WV  25716
                            (304) 528-7583

GOVERNMENT
EXHIBIT

CASE
NO. 3:04-1001

EXHIBIT
NO. B

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1    <u>Monday, May 12, 2003 at 11:03 a.m. in open court</u>

2          THE COURT:  All right.  Are we ready to proceed?

3          MR. BUSHONG:  The United States is ready, Your

4    Honor.

5          MR. FRAZIER:  Yes, sir.

6          THE COURT:  All right.  Mr. Frazier, Mr. Mooney,

7    would you please stand.

8       Mr. Mooney, I may have to ask you some questions during

9    this hearing, so my clerk is going to swear you in.

10          CLERK JUSTICE:  Please raise your right hand.

11       (The defendant was duly sworn.)

12          THE COURT:  All right.  Before we proceed to

13    sentencing, Mr. Frazier has advised the Court, Mr. Mooney,

14    that you are reconsidering your guilty plea and that you may

15    ask the Court to allow you to withdraw your guilty plea.  Is

16    that correct?

17          THE DEFENDANT:  That's correct, sir.

18          THE COURT:  All right.  I need you to speak up

19    louder than that so I can hear you.

20       Mr. Frazier, have you had a chance to discuss with

21    Mr. Mooney whatever basis he may have or believe he has --

22          MR. FRAZIER:  Yes, Your Honor.

23          THE COURT:  -- to withdraw his plea?

24          MR. FRAZIER:  I explained under Rule 32(d), I think,

25    we have to show that there's a fair and just reason.  I forget

1   the exact language for it.  And there's those six factors that

2   the Court is aware of.

3        I've explained to him, you know, this is something that

4   the Court may allow and may not allow him, and it's something

5   that I think before you can decide that, you actually probably

6   need to hear us out on those six factors.

7        With the Court's permission, I'd like to --

8             THE COURT:  All right.  Why don't you outline for me

9   what his reasoning would be.

10            MR. FRAZIER:  Judge, the six factors -- and I quote

11  here from this United States v. Ubakanma, 215 F.3d 421, which

12  is a Fourth Circuit 2000 case, and it cited some of these --

13  these six reasons.

14       The first are -- the first is whether the defendant

15  provided credible evidence that his plea was knowing or

16  voluntary.

17       And I can tell the Court that his plea was based on an

18  assumption that he had three predicate violent felony

19  offenses.  We knew that there was a potential he could be an

20  armed career criminal.  And he and I discussed that.

.21       In the indictment, it lists three.  Throughout most

22  everything I had, there's these three offenses, one of which I

23  can make, and I did make in my objections, at least what I

24  think is a good faith argument that it should not count as a

25  violent felony.

**42**

1    So his plea was based on the fact that we thought he had

2  three and that we had a decent chance of throwing one of them

3  out, in which case he would not be an armed career criminal.

4    It turns out, after the presentence report, after my

5  objections were filed, that one of those three predicates

6  actually had two subparts.  And I think he pled in June --

7  June 12th of 1989.  What I had been, at least in my mind,

8  arguing was one offense actually was two offenses.

9    And I think there's no question that under the law, under

10  the armed career criminal that what matters is how many

11  occasions.  And these are definitely different and distinct

12  occasions.

13    So now we've got four predicate offenses.  And even if I

14  win my argument, we're back to three and he is an armed career

15  criminal.  That's basically where we're coming from.  That's

16  what, I think, has triggered this motion to withdraw.

17    His -- you know, I can represent to the Court I did -- I

18  went through it over the weekend.  I went through and looked

19  at everything to see if I had evidence that there were four.

20    Their evidence, in looking through some of the computer

21  records -- and probably if I had gone through it a little more

22  carefully, I would have noted they were separate occasions.

23  But, you know, under the indictment, under Mr. Willard's grand

24  jury testimony, there's always talk of these three occasions.

25    So anyway that would be the first factor that we would

```
 1    argue, that while his plea was knowing and voluntary, it was
 2    based on an improper assumption.
 3              THE COURT:  Go ahead.
 4              MR. FRAZIER:  That's all I have on the first factor
 5    I don't know if you want to question him or if there's any --
 6              THE COURT:  Well, go ahead.
 7              MR. FRAZIER:  Okay.
 8              THE COURT:  I'd rather get it all at one time.
 9              MR. FRAZIER:  The second factor, whether the
10    defendant credibly asserted his legal innocence, Mr. Mooney
11    and I have a slight disagreement on this one.
12         He asserts he's innocent because, while he had possession
13    of the handgun, he was doing it for the right reason.  And I
14    don't disagree with that.  I think there's plenty of evidence
15    that he was doing it for the right reason.  He took this gun
16    away from his wife, who he was afraid was going to shoot him
17    or do something bad, and he took it.
18         I've advised him that, in my opinion, legally that may
19    not be legal innocence because I don't think that the elements
20    of this offense allow for us to make that argument in front of
.21   the jury.
22         Mr. Mooney understandably disagrees with that and thinks
23    that he should be allowed to argue to the jury that while,
24    yes, he had possession, that the reasons he had possession
25    should somehow nullify that.
```

**44**

1    The third factor, whether there's a delay between

2  entering the plea and moving for withdrawal, obviously there

3  was.  Today is the sentencing date.

4    I would state that until I got the report back -- or I

5  think it was actually a phone call from Miss Miller a week or

6  ten days ago, that was the first time I really -- it hit me

7  that there's four separate offenses, not three.  I did not

8  have a chance to go down and see Mr. Mooney last week because

9  I was busy.

10    So to the extent there was any delay, I don't think it

11  was that big a deal because it was only in the last ten days

12  that we actually found out about this.

13    Whether he had close assistance of competent counsel, I

14  argue he did, but the Court may take judicial notice

15  otherwise.

16    Whether the withdrawal will prejudice the Government,

17  again I guess the Government can always argue that trying a

18  case at this point is going to cost more and, you know, have

19  to bring witnesses in.  We would argue that's not that big a

20  factor in this case.

21    And whether the withdrawal will inconvenience the Court

22  and waste judicial resources.  You know, I obviously have

23  trouble arguing that that's not the case because obviously

24  we've wasted your time here on a plea hearing if we withdraw

25  this.



1     So, again, I think if you look at it based on the fact

2  that this entire thing started based on an erroneous

3  assumption, I think it's at least understandable why we're

4  here today.

5     That would be the substance of my motion.

6          THE COURT:  All right.  Mr. Mooney, let me ask you,

7  first, when you entered your guilty plea, you knew and

8  understood that you could be punished as an armed career

9  criminal, didn't you?

10         THE DEFENDANT:  I'm not guilty of this.

11         THE COURT:  Well, first, I want to talk about your

12  plea.  Then I want to hear what you say about whether you're

13  actually guilty or not.

14     As Mr. Frazier outlined, the first factor I've got to

15  look at is whether at the time of your plea you made a knowing

16  and intelligent plea.  And I know that I asked you at the time

17  of your plea whether you knew and understood the maximum

18  penalties.  Do you remember that?

19         THE DEFENDANT:  Yes, sir, you did.

20         THE COURT:  And I asked you specifically if you

21  understood that you might be subject to being found an armed

22  career criminal.  Do you remember that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  And I told you at that time that if you

25  were found to be an armed career criminal because of your

**46**

1   previous convictions, that the penalty would be at least 15

2   years in prison.  Is that right?

3           THE DEFENDANT:  That's correct, sir.

4           THE COURT:  So you knew and understood at the time

5   you entered your plea that if your criminal history included

6   three violent crimes, that you could be subject to this 15-

7   year mandatory minimum, didn't you?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  As you stand here today, can you

10  honestly say that there's anything that Mr. Frazier failed to

11  tell you or explain to you that caused you to enter this

12  guilty plea under some kind of mistake?

13          THE DEFENDANT:  Just the assumption that, you know,

14  that I'd be down to a 24 and not a -- that -- Your Honor,

15  maybe I don't understand the Government's law and this, that

16  and the other, but my criminal points is 33.  I got my three-

17  point acceptance of 30.  It's 165 months.  But because it's a

18  career criminal, there is no acceptance.  It goes back up to

19  180.

20          THE COURT:  Well, I understand that.  And to be

21  candid with you, Mr. Mooney, I don't blame you for being upset

22  about facing a very lengthy prison sentence, but I've got to

23  take this a step at a time.  And the first thing I would have

24  to find as a judge, before I could let you withdraw your

25  guilty plea, would be that you didn't know or understand what

**47**

1   you were pleading guilty to.

2       Now, it's one thing to not like the result.  A lot of

3   people stand here and don't like the result.  Sometimes I

4   don't like the result.  But at this point, I don't know of any

5   reason how I could say that you failed to know and understand

6   what you were doing when you entered your guilty plea.  And

7   you haven't told me anything that Mr. Frazier didn't tell you

8   that he should have or told you wrongly.

9           THE DEFENDANT:  Well, Your Honor, one other thing,

10   as we've argued here just a little bit ago, but Mr. Miller

11   (sic) and Mr. Willard come down to the Carter County Detention

12   Center and brought a plea agreement down there.

13       We talked and we talked and we talked.  He got up to

14   leave.  He laid it down there and he said, "If you sign the

15   plea agreement, fine."  He said, "If you don't, we'll have no

16   hard feelings."  I signed that plea agreement.

17       When I come up here for sentencing, Mr. Frazier brought

18   another one and he said that one was no good.  And that -- I

19   mean, you know --

20           THE COURT:  Well, I don't know what --

21           MR. FRAZIER:  Your Honor, I can clear this up.

22   When we were talking plea, Mr. Bushong and Mr. Willard met

23   Mr. Mooney and I down at the Carter County Jail, and

24   Mr. Bushong brought along, you know, a standard plea

25   agreement.  And we talked about it, and, you know, "If you

**48**

1    want to plead, sign this."

2         Well, after Mr. Bushong and they left, Mr. Mooney and I

3    talked about it.  We went over the plea agreement.  The plea

4    agreement states that the maximum potential penalty is

5    imprisonment for a period of ten years.

6         I advised Mr. Mooney at the time down at the jail that I

7    thought this was incorrect, this was an error, because I

8    thought he could be subject to more than that.

9         Nonetheless, Mr. Mooney -- we went ahead and signed it

10   because we thought, well, maybe, you know, the Government

11   knows best, or for whatever reason.  And I think by the time I

12   got back, I had a phone call from Mr. Bushong saying, "Wait a

13   minute.  I gave you the wrong plea form."

14        I advised Mr. Mooney that even had the Government signed

15   this, which they did not, that I didn't think the Court would

16   accept it because it's based -- it's wrong.  I mean, with his

17   record -- this is the standard felon-in-possession plea

18   agreement and not the armed career criminal felon-in-

19   possession.

20        So I understand his -- Mr. Mooney's problem is he's got

21   an agreement from the Government, what he thinks is an

22   agreement from the Government that says he's in prison for a

23   maximum of ten years.  And he's right.  When we came to the

24   plea, we had the new agreement, which states imprisonment for

25   20 years -- I forget what it is.

1           MR. BUSHONG:  Fifteen.

2           MR. FRAZIER:  Fifteen years.  And that's part of the

3 problem, is Mr. Mooney signed something thinking he had an

4 agreement.  I told Mr. Mooney I'm not going to lie to the

5 Court, because I told him at that time I thought it was wrong,

6 but --

7           THE COURT:  Well, in any event, Mr. Mooney, when you

8 came for your plea, you signed the new plea agreement that

9 stated that you could be an armed career criminal and that you

10 could receive a sentence of at least 15 years in prison as a

11 result?

12           THE DEFENDANT:  I asked Mr. Frazier at that time,

13 "At any time before sentencing, can I withdraw that plea?"

14 And he assured me yes.

15           THE COURT:  Well, I don't know about that, but I've

16 gone back over the questions I asked you at the time of the

17 plea.  And in view of the fact that the plea agreement that

18 you signed and that was presented to me and that you

19 acknowledged and accepted the day you were here for your plea

20 told you that you could be an armed career criminal based on

21 your prior convictions -- I asked you specifically about that,

22 if you understood that that was a possibility here and that

23 you would face a mandatory minimum of 15 years if that were

24 the case and that no one could tell what the ultimate

25 guideline range would be or sentence until we did this

1   presence report, and you indicated at that time you

2   understood and accepted all of those factors.

3       So I cannot find that you -- in this case, I would find

4   that you made a knowing and voluntary decision to enter a

5   guilty plea.

6       The next factor that I've got to look at is whether

7   there's some basis for you to argue that you're legally

8   innocent of this charge.

9       Was there something else you wanted to say about how this

10  happened or why it happened that you believe makes you

11  innocent of illegally possessing a gun this day?

12          THE DEFENDANT:  Yes, sir.  I took the gun.  I took

13  the gun away from somebody to keep them and me from getting

14  hurt, to turn it in to the Huntington police, okay?

15      I did what was right.  You know, I didn't do what was

16  wrong.  I didn't intentionally do something.  I did something

17  that was right.  And now I'm being punished to the max for

18  something I did right, and I don't understand it.

19          THE COURT:  Well --

20          THE DEFENDANT:  I just do not understand it.

21          THE COURT:  All right.  I'll do the best I can to

22  explain it to you.  And I explained the elements of the

23  offense, what the Government would have to prove for you to be

24  convicted at the time that I took your guilty plea.  And I'll

25  go over that again.

1   First, obviously the Government has to prove that you had

2   these prior convictions that makes it a crime for you to

3   possess a gun.  I explained all that to you.  I think you

4   understood all that.  And clearly you have the prior felony

5   convictions -- it only takes one -- that makes it illegal for

6   you to possess a gun.

7   Then the only other question is whether you knowingly and

8   intentionally actually possessed the gun that day.

9   Now, I understood at the time of your plea that you may

10   have been, in your mind, doing the right thing because your

11   ex-wife had this gun and apparently was threatening you.  And

12   I understand there's a big dispute, or at least there was at

13   the time you were arrested, about whatever argument you might

14   have been having with your ex-wife and whether you were --

15   whether you, more or less, broke in and started causing

16   problems with her or whether it was something where she really

17   was the one who instigated the problem.

18   And none of that really is a factor as far as I'm

19   concerned.  And I think the presentence report indicates that

20   we've gotten different versions of what happened at the house,

21   but very clearly even the presentence report and I believe all

22   the law enforcement officers involved in your arrest agree

23   that you took that gun with you and you went to the bar and

24   that at least perhaps you told the bar owner that you'd taken

25   the gun from her and you intended to turn that gun over to the

1 | police.

2 | THE DEFENDANT:  That's correct.

3 | THE COURT:  Even your ex-wife says that at one point
4 | you had said you were -- you didn't like the fact that she had
5 | that gun around there and you were taking it and were going to
6 | get rid of it.

7 | If she was holding a gun on you or threatened you with a
8 | gun and you took that gun away from her and threw it in the
9 | garbage or something or threw it out in the street or
10 | something like that, that might be a defense to this charge.
11 | But the fact is, even if you had a good reason to continue
12 | possessing that gun, certainly by the time you walked out of
13 | the house with it, you committed a crime, if that's factually
14 | what happened, if you actually took the gun and left the
15 | house.  And it appears that no one, even you, argues any other
16 | version of it.

17 | However the altercation occurred, whether it was you
18 | starting it or not, you did leave the house with a gun and you
19 | walked down to Whisman's Bar and you walked in there with the
20 | gun and you walked out of there with the gun when the police
21 | apprehended you.

22 | So even though you may have had a good reason to take
23 | that gun from her initially, it's pretty clear to me that if
24 | those were the facts, that you still violated the law.

25 | The statute that Congress wrote here that makes it

**53**

1   illegal for you to possess a gun doesn't allow for any

2   circumstances such as a good reason to have the gun.  You

3   would be guilty of this crime if you had the gun -- if you had

4   a gun for self-protection.  You would be guilty of this crime

5   if you had the gun for hunting or some other legitimate,

6   lawful purpose.

7        So in this case, if it's your argument that you took the

8   gun from her and you walked down to the bar with a good reason

9   behind your having the gun, I don't believe that's a legal

10  defense to this charge.  The statute doesn't create any sort

11  of exception for that reason for having a gun.  And if you

12  went to trial, I wouldn't let you or your lawyer argue that to

13  the jury.

14       I wouldn't let your lawyer or you argue, "Well, don't

15  convict him on this because even though he possessed the gun

16  and he knew he'd been convicted of a felony and wasn't

17  supposed to possess a gun, that he had a good reason here,

18  because he was really trying to do the right thing and get

19  this gun away from this woman and turn it over to the police."

20       Under the circumstances here, I don't believe that that

21  would be a legal defense to this charge, and I wouldn't let

22  you argue that to the jury, and I believe that you'd still be

23  guilty of the crime.

24       So if that's your real argument here against this plea

25  that you've entered, I don't believe that you have any way of

**54**

1   showing me that there's a legal defense that you're legally

2   innocent of this charge.  Do you understand all that?  I'm not

3   asking if you agree.  I just ask if you understand.

4           THE DEFENDANT:  (Nods head up and down)

5           THE COURT:  You do?  I need you to answer out loud.

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Well, I understand why you're unhappy.

8   You know, as I think we discussed at the time of your plea,

9   you've had a number of serious convictions, but it seems like

10  in the last few years you've done a lot better.  And as I

11  said, I've never assumed that the first report your ex-wife

12  gave that implied you were breaking in and threatening or

13  something, I never assumed that that was true.  It really

14  hasn't mattered, for the reasons I've already explained to

15  you.

16      I think once you walk out of that house with the gun,

17  especially the fact that you continue to possess it, is enough

18  that it would make you guilty of this crime even though you

19  have a pretty good argument for why you took the gun from her

20  in the first place.

21      Is there anything you want to add or say to any of that,

22  Mr. Mooney?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Well, before I could let you withdraw

25  your guilty plea, the second factor that I have to consider is

**55**

1  whether I think you have an argument that you're legally
2  innocent, and I don't believe that you do.

3      So the first two factors are whether you knowingly and
4  intelligently entered a guilty plea.  And I found that you
5  did.  And the second factor is whether you have presented an
6  argument for legal innocence.  And I don't believe that you
7  have.  So I don't even need to go further than the first two
8  factors you can't meet, and therefore I'm not going to allow
9  you to withdraw your guilty plea.

10     In this case, I think the plea was knowingly and
11  intelligently made.  And I understand why you're disappointed
12  and frustrated with the result, but I can't find any basis to
13  determine that you're legally innocent.

14     I recognize that you and Mr. Frazier hoped that you might
15  be able to get around this armed career criminal provision if
16  you could knock out that non-aggravated robbery charge that
17  you were convicted of, but under the law it's clear to me that
18  you had three other felonies that fall within the definition
19  of violent felony.

20     A violent felony under this statute doesn't have to be
21  where somebody actually got hurt.  It can involve the use or
22  even the threatened use of physical violence.  And it doesn't
23  take much to imply a threatened physical violence.

24     Burglary is automatically covered as one of those prior
25  offenses that's deemed to be a violent felony.  Robbery by its

1    definition I believe is a violent felony.  I haven't looked at

2    any of the indictment that charged you with this

3    non-aggravated robbery that your lawyer objected to.  Clearly

4    the aggravated robberies that you were convicted of fall

5    within this category of violent crime.

6         I understand that at the time of your plea, you may not

7    have been completely aware or recall that you had two

8    convictions on the same date for these aggravated robberies,

9    but clearly when you entered your guilty plea -- and I think

10   that was in 1988 --

11        MR. FRAZIER:   '89.

12        THE COURT:   -- '89, those were two different

13   occasions where you committed aggravated robberies.  I think

14   they both involved a threatened use of force.  You implied you

15   had a gun or something when you robbed a pharmacy or something

16   like that.

17        So clearly those are -- robbery falls within the category

18   of violent crime.  I think non-aggravated robbery does too.

19   Generally speaking, under West Virginia law, even a

20   non-aggravated felony -- or robbery is a felony.  So clearly

21   it's a violent felony.

22        Robbery always implies or requires as an element the

23   threat or the use of force.  And so by its definition, even

24   non-aggravated robbery I believe falls within the category of

25   violent crime as defined by Section 924 that's at issue here.

**57**

1    It can be any violent -- a violent crime could be any felony

2    where the use of force is threatened or where the risk -- I

3    think the statute uses the term "serious risk" or "potential

4    risk" of injury to another person.  And I think that even

5    non-aggravated robbery falls within that category.

6         So the long and short of it is, I think in this case you

7    had these prior convictions.  You certainly had the

8    opportunity to discuss all this with Mr. Frazier, and he was

9    aware and you were aware that you faced this possibility of

10   armed career criminal.

11        So I think that when you made your guilty plea, you took

12   a chance, took a risk, hoping that you could avoid the armed

13   career criminal.  And now that it's clear that you can't, I

14   understand why you would like to get out of this plea, but I

15   don't believe that's a legal reason for me to allow you to get

16   out of the plea.

17             THE DEFENDANT:  Give me 165 months?

18             THE COURT:  I'm sorry?

19             THE DEFENDANT:  Give me 165 months?

20             THE COURT:  Well, I wish I could.  I intend to give

21   you a sentence at the bottom end, and I would have, probably,

22   had you not been determined to be an armed career criminal and

23   faced a higher amount.  But in this case, I think you've got

24   four prior convictions for what are deemed to be violent

25   felonies under the statute that applies here.

**58**

1      So having said all that, I will deny the defendant's

2  request that he be allowed to withdraw his guilty plea, for

3  the reasons I've stated on the record.

4      All right.  Let's now turn to the sentencing report.

5  Mr. Frazier, you've had a chance to read the report, I'm sure.

6          MR. FRAZIER:  Yes, Your Honor.

7          THE COURT:  Is there any reason why sentencing

8  should not take place today; now that we've addressed the

9  defendant's desire to withdraw his plea?

10          MR. FRAZIER:  No, Your Honor.

11          THE COURT:  Mr. Mooney, have you had a chance to

12  read the report and discuss it with your attorney?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand the contents of the

15  report?

16          THE DEFENDANT:  Well --

17          THE COURT:  And I'm not asking if you agree with

18  what the report says or my analysis, but I want to make sure

19  that you've told me about anything in the report that we

20  haven't already discussed now that you believe is improper or

21  would lead to an improper sentence.

22          THE DEFENDANT:  Can I ask you something, Judge?

23          THE COURT:  Yeah.

24          THE DEFENDANT:  How do they go about -- on this

25  point system, you know, there's guys down there in that

**59**

1   jail -- is points determined on the person or on the crime or

2   what?

3          THE COURT:  Both.  Here's the way it works.  Yeah,

4   both.  Under the law -- Congress passes a law and makes

5   something a crime and sets out what we call a statutory

6   penalty.  And that's the minimum or the maximum.

7          In your case, it's a mandatory minimum of 15 years

8   because of all the things we've just talked about.  Under the

9   statute, you have three prior violent felony convictions.  And

10  so when you possessed this gun, you're subject to this armed

11  career criminal provision that makes a mandatory minimum of

12  15 years.

13         Within the penalties set out by Congress, that 15 to

14  life, the Court has to look at the sentencing guidelines.  And

15  that assigns points to, first, the circumstances of the crime

16  and, secondly, to things like your criminal history, things

17  that are directly determined by who you are and what you've

18  done in your past.

19         In a drug case, the sentence is largely determined by the

20  amount of drugs.  Under the guidelines, the more drugs you've

.21 got, the more points you've got.  Under other gun charges,

22  for instance, the more guns you've got, the more points you

23  get.

24         If you've just been in possession of a gun, you get so

25  many points.  If you actually use that gun, you might get more

**60**

1   points for that.

2       So all of those things determine points.  We use points

3   for all of that so that we try to treat people pretty much the

4   same.  If there are two people in here who have been convicted

5   of drugs, one of them had a lot more drugs than the other, the

6   one with a lot of drugs is going to have more points and get a

7   higher sentence.  If they have the same number of drugs,

8   they're going to get the same number of points.  So it makes

9   it much more uniform as a result.

10      The same on your criminal history.  There are points that

11  get applied, depending on what you've been convicted of,

12  whether it was a serious crime or not, what kind of sentence

13  you got before, how long ago it was.  If you commit a crime

14  while you're on probation, you get more points on your

15  criminal history for that.

16      So all of those things result in points, and that's what

17  these guidelines use, is a point system.  We add up all the

18  points.  When you enter a guilty plea or you play a smaller

19  role in the offense as compared to other people, you get

20  points taken off.

21      As you already understand, in your case you would

22  normally get three points taken off because you have been

23  cooperative and truthful and entered a guilty plea.

24  Unfortunately for you, that statutory sentence, the one that

25  Congress passed here, sets a floor of 15 years.  So it doesn't

1   matter what your points are, you're going to get at least 15

2   years.  And you could get higher if you have points that put

3   you up over 15 years.  It could be up to life.

4        So, in short summary, that's the way these points work

5   and that's the way it will work in your case.  Do you

6   understand?

7             THE DEFENDANT:  Thanks for the information.

8             THE COURT:  All right.  Given all that, do you

9   believe you understand the contents of the report?

10            THE DEFENDANT:  Yes.

11            THE COURT:  All right.  All right.  I've reviewed

12   the addendum.  It appears that there were two objections.

13        First, as I understand it, the defendant objects to

14   language in different paragraphs of the report that describe

15   the offense conduct.

16        I note, as the probation officer pointed out, that there

17   were different versions of what happened between you and your

18   ex-wife and that those different versions came, first, from

19   her, that she gave slightly different versions, first, when

20   she made the call to 911 and, second, when she talked to law

.21  enforcement officers.  She's made different versions when she

22   talked to probation.

23        Because of all that, I would find in this case that the

24   probation officer accurately and properly noted in the report

25   which statement your ex-wife made, and when, because it's

1   clear from the report that she made different -- she gave

2   different versions of what happened.

3       All the probation officer is trying to do here is report

4   those different versions.  And it's clear that she's -- the

5   probation officer is clear that she's talking about the

6   different things that your ex-wife said and not taking sides

7   on whether she was telling the truth on all these occasions or

8   which version is right.

9       As I've indicated in discussing your request that you be

10  allowed to withdraw your plea, I think I said -- and I'll say

11  it again, to be more blunt about it -- I don't know exactly

12  what happened there between you and your ex-wife.  I think

13  you're just as credible, or maybe more so, than she is about

14  what happened between the two of you that resulted in this gun

15  coming out and being in your possession.  But it doesn't

16  matter.

17      Whether you broke in her house and you threatened her or

18  whether, you know, she did everything wrong and bad and she

19  was the one who instigated this entirely doesn't matter under

20  these guidelines.  You're not being sentenced more harshly

21  because I think you started the problem in the house.  It has

22  nothing to do with that.

23          THE DEFENDANT:  I understand.

24          THE COURT:  So given that, Mr. Frazier, unless you

25  can tell me something to the contrary, I don't believe I need

1    to resolve exactly what happened and whose version is the

2    truth, the truthful version of what happened with his ex-wife

3    at the house that resulted in his possessing the gun.

4              MR. FRAZIER:  You're correct, Your Honor.

5              THE COURT:  All right.  Then the other objection

6    goes to his criminal history and the convictions.

7         As the probation officer noted in this case, he has four

8    prior felony convictions.  You objected that the

9    non-aggravated robbery shouldn't be included as a predicate

10   offense for this armed career criminal.

11        If it's not, the Court would find that he still has the

12   other three convictions that we've already discussed.  Three

13   is all it takes.  So even if I find that the non-aggravated

14   robbery should not count as a predicate offense, he's still

15   stuck with the other three.  Is that right?

16             MR. FRAZIER:  I think that's correct.

17             THE COURT:  All right.  For clarification reasons,

18   do you want to make any further argument about whether the

19   non-aggravated robbery should or shouldn't count?

20             MR. FRAZIER:  I think I set out my argument in my

.21  objections and I don't see any reason to belabor any more time

22   on it, Your Honor.  And as you say, even if I'm right, it

23   doesn't affect the sentence.

24             THE COURT:  Mr. Bushong, do you want to address that

25   at all?

**64**

1    MR. BUSHONG: No, Your Honor. I agree.

2    THE COURT: All right. Well, the Court finds in

3 this case that it's unnecessary for me to resolve whether the

4 non-aggravated robbery should count, because he's got the

5 other three convictions, and clearly those are predicate

6 offenses for the armed career criminal provisions.

7    Are there any other objections the Court need address in

8 this case?

9    MR. FRAZIER: No, sir.

10    THE COURT: All right. The Court finds sufficient

11 indicia of reliability to support the probable accuracy of the

12 information in the presentence report and the addendum.

13 Accordingly, the Court adopts the presentence report and the

14 addendum.

15    If an appeal is taken, the Court orders the probation

16 office to submit a copy of the final presentence report to the

17 clerk for filing under seal to transmit to the Court of

18 Appeals under seal. In the event of an appeal, the probation

19 office, upon request from appellate counsel and without

20 further order of this Court, shall provide counsel with a copy

.21 of the final presentence report, except for the recommendation

22 section.

23    At this time the Court accepts the plea agreement on the

24 grounds that the defendant's plea adequately reflects the

25 seriousness of the actual offense behavior and accepting the

**65**

1    agreement will not undermine the statutory purposes of

2    sentencing or the sentencing guidelines.  The Court's judgment

3    and sentence will be consistent with the plea agreement.

4         The defendant stands convicted of possession of a firearm

5    by a convicted felon in violation of 922(g)(1) and 924(a)(2).

6    The maximum penalty for this violation is imprisonment of --

7    excuse me.  He also qualifies as an armed career offender

8    under Section 924(e).  The maximum penalty for this violation

9    as enhanced by 924(e) is imprisonment of not less than 15

10   years, up to life, supervised release of not more than five

11   years, a fine of $250,000, restitution, and the special

12   assessment.

13        The relevant sentencing guideline is found in Section

14   2K2.1.  It would set a base offense level of 24 because the

15   defendant has at least two prior felony convictions.  However,

16   4B1.4 provides that the offense level for an armed career

17   criminal is determined by 924(e), the enhanced sentence.

18   Under the -- as a result of the prior convictions the Court

19   has already discussed, the defendant is an armed career

20   criminal under the statute.  And because of that, he faces an

21   offense level of 33, that being the higher level applied by

22   the career offender guidelines.

23        The defendant is entitled to the reduction for acceptance

24   of responsibility.  The Court finds in this case he's entitled

25   to the full three-level reduction.  That would set a base

1  offense -- total offense level, rather, of 30.

2      He has 13 criminal history points.  That puts him in

3  category VI.  But because he's an armed career criminal, the

4  Court notes that the term of imprisonment would be not less

5  than 180 months because it's a mandatory minimum of 15 years.

6  So even though he has a total offense level of 30 and a

7  criminal history category of VI, the guideline range would be

8  180 months to 210 months, supervised release of three to five

9  years, a fine of $15,000 to $150,000, restitution, and the

10  special assessment.

11      Mr. Bushong, do you want to comment on my calculations or

12  otherwise address the Court?

13      MR. BUSHONG:  Could I have one second, Your Honor?

14      (Mr. Bushong and Mr. Frazier conferred privately off the

15  record.)

16      MR. BUSHONG:  Your Honor, I believe your

17  calculations are correct, and nothing further to add.

18      THE COURT:  All right.  Mr. Frazier?

19      MR. FRAZIER:  Your Honor, first, I'd like to, if I

20  can, make the voided plea agreement maybe an exhibit to this,

.21  just so --

22      THE COURT:  All right.  You may file it.

23      MR. FRAZIER:  It's been signed by Mr. Mooney and

24  myself, but not by the Government.  I tender that and make it

25  part of the record.

**67**

1          THE COURT:  All right.

2          MR. FRAZIER:  The cross here on the front is my

3   writing.

4          Your Honor, I think you understand the situation here.  I

5   won't take much of your time.  I would ask that you sentence

6   Mr. Mooney near the low end.

7          He's got a checkered past.  There's no question.  But if

8   you look at it, it's all drug- and alcohol-related.  You know,

9   he wasn't a very nice man for a long, long time, but the last

10  few years he has straightened things out and he was making

11  good wages and paying his taxes.

12         Unfortunately, he got himself in this situation here

13  which you understand -- we understand -- we all understand

14  it's unfortunate, but the law is what the law is.  I would ask

15  that you sentence him near the lower end.

16         He does have hepatitis and medical problems.  And we

17  would ask that when it comes time to -- if you could recommend

18  he be sentenced to a facility that would allow him to get

19  treatment for that.

20         THE COURT:  All right.  Mr. Mooney, do you want to

21  say anything before I impose sentence?

22         THE DEFENDANT:  Well, Your Honor, I've tried to do

23  what was right.  I mean, this is a big mistake, and I don't

24  understand the biggest part of it, but I guess it's not up to

25  me.  I tried to do what is right.  I've worked out of the

**68**

1   union for the last five years.  I tried to be a working man of

2   society, you know.  Like you said, unfortunately this

3   happened.  I mean, you know, that's about all I can say, Your

4   Honor.

5          THE COURT:  All right.  Well, as I've already

6   indicated, Mr. Mooney, I understand why you feel that this is

7   unfair.  On a personal level, I think it's probably an example

8   of why mandatory minimum sentences, especially such high ones

9   like 15-year floors, are unfair, because if I had my

10  preference, I think that the sentence you would get under the

11  guidelines would be a fairer sentence and that this -- I

12  certainly would give you a sentence at the bottom end of the

13  guideline range.  I wouldn't sentence you as high as I'm going

14  to because of the mandatory minimum.

15         So I think it's unfair to that extent, but I don't have

16  any choice but to follow the statute that Congress has passed

17  and directed in this case.

18         So it will be the judgment of this Court that the

19  defendant be committed to the custody of the Bureau of Prisons

20  for a term of 180 months.

21         I do recognize you have serious health problems.  As a

22  result, I'm going to recommend that the Bureau of Prisons

23  designate a medical center where you can be fully evaluated

24  for all your medical problems.

25         Upon release from prison, the defendant will be on

**69**

1    supervised release for three years.  Within 72 hours of

2    release from custody, the defendant will report in person to

3    the probation office in the district to which he's released.

4         Mr. Mooney, when you go on supervised release, you must

5    not commit another federal, state or local crime.  You must

6    not possess a firearm or other dangerous device.  And you must

7    not unlawfully possess a controlled substance.

8         You will be required to comply with the standard terms

9    and conditions of supervised release as recommended by the

10   sentencing commission and as adopted by this Court, including

11   the special condition that you participate in a program of

12   testing, counseling and treatment for drug and alcohol abuse

13   as directed by your probation officer.

14        The Court does not find that this defendant poses a low

15   risk of future substance abuse.  Accordingly, the Court orders

16   the defendant to submit to one drug test within 15 days of

17   release and at least two periodic drug tests thereafter as a

18   condition of supervised release.

19        The Court finds the defendant doesn't have the resources

20   to pay a fine.  And given his medical condition, it's unlikely

21   he'll be able to pay a fine in the future.  Accordingly, the

22   Court imposes no fine.

23        There's no identifiable victim, and the Court does not

24   order the defendant to pay a fine.  Accordingly, the Court

25   does not order the defendant to pay restitution.

**70**

1    The Court does order the defendant to pay the $100

2    special assessment.  And I understand he's agreed to pay that

3    by participating in the Inmate Financial Responsibility

4    Program.

5        The Court finds, with the exception of the fine, this

6    sentence is within the guideline range.  In this case, the

7    guideline range would exceed 24 months, and because the

8    mandatory minimum was 180 months, the Court imposed a sentence

9    at the bottom end of the guideline range.  I believe that that

10    is a fair sentence given the circumstances of your arrest and

11    conviction.

12        The Court finds that that sentence reflects the nature

13    and circumstances of the offense, the history and

14    characteristics of the defendant, and the needs for

15    deterrence.

16        Are there any reasons why this sentence should not be

17    imposed as stated?

18            MR. BUSHONG:  No, Your Honor.

19            MR. FRAZIER:  No, sir.

20            THE COURT:  If not, I order the sentence imposed as

21    stated.

22        Mr. Mooney, you have a right to appeal this sentence.  If

23    you choose to appeal, you have to file a written notice of

24    appeal with the Clerk of this Court within ten days of

25    judgment being entered in your case.  If you fail to file that

**71**

1   written notice of intent to appeal within this ten-day period,

2   you may lose your right to appeal.  Do you understand that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Also, if you file that notice of appeal

5   and the Court finds you don't have the money to hire a lawyer

6   or to get documents or transcripts you would need for an

7   appeal, those costs will be borne by the United States.  Do

8   you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  All right.  Are there any other matters

11   the Court need address in his case?

12          MR. BUSHONG:  No, Your Honor.

13          MR. FRAZIER:  No, sir.

14          THE COURT:  If not, we'll stand in recess.

15       (Hearing concluded at 11:45 a.m.)

16

17

18

19

20

21       I, Teresa M. Ruffner, certify that the foregoing is a

22   correct transcript from the record of proceedings in the

23   above-entitled matter.

24

25   _____          June 24, 2003

**72**

**UNPUBLISHED**

### UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

_____

### No. 03-4433

_____

UNITED STATES OF AMERICA,

                                       Plaintiff - Appellee,

      versus

JOHN DAVID MOONEY,

                                   Defendant - Appellant.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (CR-02-231)

_____

Submitted:  October 22, 2003        Decided:  March 22, 2004

_____

Before WILKINSON, NIEMEYER, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

W. Michael Frazier, FRAZIER & OXLEY, L.C., Huntington, West Virginia, for Appellant. Kasey Warner, United States Attorney, Miller A. Bushong III, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

John David Mooney pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g), 924(a)(2) (2000). On appeal, he alleges that the district court erred by denying his motion to withdraw his guilty plea. We do not find that the district court abused its discretion in denying Mooney's motion to withdraw. <u>United States v. Ubakanma</u>, 215 F.3d 421, 424 (4th Cir. 2000). Thus, we affirm. We also deny Mooney's motion to stay case. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

- 2 -