IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON



FILED

AUG - 1 2006

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

| | | |
|---|---|---|
| JOHN DAVID MOONEY, | * | |
| Movant, | * | |
| vs. | * | Case No. 02-00231 |
| UNITED STATES OF AMERICA, | * | Civil No. 04-1001 |
| Respondent. | * | |

### OBJECTIONS TO THE FINDINGS AND RECOMMENDATION

**NOW COMES** the Movant, John David Mooney, pro se and respectfully sumbit his objections to the Magistrate Judge's Findings and Recommendation as to the denial of the motion pursuant to Title 28 U.S.C. § 2255. For the reasons contained herein, Movant argue that this Honorable Court overrule the findings and recommendation of the Magistrate Judge and grant his § 2255 motion or in the alternative, grant an evidentiary hearing to develop the record futher.

### I. OBJECTIONS

A. <u>Factual Findings</u>

Movant objects to the Magistrate Judge's failure to take notice of his attempts to contact the Huntington Police Department. Attached to the original § 2255 motion, the Court will find the movant's affidavit and transcript of the 911 calls from 2608 Adams Avenue on the night that led to the instant offense. In the affidavit, the movant clearly stated that he placed two

calls to 911 before leaving the residence. The transcript further support the movant's statement contained in the affidavit.

The exclusion of the movant's attempted calls to 911 gives the impression that the movant's ex-wife was the only individual to attempt to contact the police department. Therefore, the movant submit that these critical events (i.e., 911 calls) be included in the findings by the Court.

B. Performance Prong

The Magistrate Judge found that the movant did not satisfy the performance prong of Strickland v. Washington, 466 U.S. 668 (1984); thereby, making it unnecessary to "address the prejudice prong." [Findings and Recommendation ("F&R"), p.3]. The Magistrate Judge's reasoning is predicated on this Court's ruling, during the hearing on the motion to withdraw the guilty plea, that the movant would be unable to argue an "innocent defense" at trial. (Sentencing Transcript, 05/13/03, pp. 15-16). Movant objects to the Magistrate Judge's findings in the following regards:

1. Hindsight/Counsel's Perspective

It is a correct assessment of the law that reviewing courts should "eliminate the distorting effects of hindsight" and assess counsel's decisions from the "perspective at the time" of the deficient performance. Strickland, supra at 689. In the same respect, reviewing courts should refrain from imploying "hindsight" to save counsel's performance under the "cause" prong of Strickland. It is the movant's opinion that the Magistrate Judge utilized an analogous approach to justify counsel's performance in his

-2-

Finding and Recommendation.

Before addressing the Magistrate Judge's approach, clarification is required for the movant's claim. Contrary to the Magistrate Judge's asertion that the claim is based on "counsel's failure to advise him to go to trial based on the defense of justification" (F&R, pp. 4-5), the movant presented a claim that counsel failed to advise him of any of the available affirmative defenses to Title 18 U.S.C. § 922(g) offenses. This case is not grounded in the belief that counsel ought to advise his client to proceed to trial; the movant assert that he had a right to be informed of the availbility of affirmative defenses before deciding whether to plead guilty or proceed to trial even if the defense was later barred by the Court. Therefore, the movant submit that the Court review his objections from this frame of reference.

The threshold question is whether counsel had knowledge of the justification defense and the requirement set forth in United States v. Crittendon, 883 F.2d 330 (4th Cir. 1989) before the movant's plea. This important question was left unanswered by the Magistrate Judge without the luxury of an affidavit from counsel or an evidentiary hearing. If--as it appears--counsel spoke to the movant about the facts of the case prior to the plea agreement, it must be determine if counsel independently explored the possible avenues of a justification defense before the guilty plea. Absent an affidavit or evidentiary hearing, the Court cannot be certain that counsel was apprised of the justification defense and should be hesitant to rush to such a conclusion.

The Fourth Circuit decision in <u>Luchenbury v. Smith</u>, 70 F.3d 388 (4th Cir. 1996) is a prime example of a counsel's lapse of legal intelligence and instructive though it involves counsel's failure to request an expanded instruction. In <u>Lunchenbury</u>, the Court found that trial counsel was indeed ineffective for failing to request an expanded instruction. When faced with counsel's total abandonment of an argument, the Court noted that such an expanded instruction was a correct statement of the law. The Court rejected any notice that counsel's failure to request an expanded instruction was based on sound trial strategy, finding that "counsel made no tactical 'choice,' unless a failure to become informed of the law affecting his client can be so considered." <u>Id</u>., at 392-93. It is obivous from the above case and several other cases that counsel can be oblivious to matters of the law concerning his or her client. See <u>McGraw v. United States</u>, 106 F.3d 391 (4th Cir. 1997)(copy attached to original § 2255 motion as Exhibit C).

The current federal judicial mise-en-scène essentially relinquish the necessity of a defense strategy in light of the sheer percentage of cases resolved with plea agreement. It has been stated that "[n]inety percent of criminal convictions today are obtained by guilty plea. See U.S. Dept. of Justice, Office of Justice Programs, Bureau of Justice Statistics, Section 5: Judicial Processing of Defendants, in United States Sentencing Commission, 1999 Sourcebook of Criminal Justice Statistics (2000) (Tables 5.30, 5.51)." <u>INS v. ST CYR</u>, 533 U.S. 289, 323 n. 51 (2001). Faced with the overwhelming possibility that a federal

defendant will opt to plead guilty instead of proceeding to trial, the majority of counsels are deft in securing a favorable plea agreement and are no longer skilled in the art of defenses. Nonetheless, the movant argue counsel's superior plea bargain skills were inapt in the case at bar.

Of course, this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Truesdale v. Moore, 142 F.3d 749, 753-54 (4th Cir. 1998). The movant implore the Court not to turn a "blind eye" and "deaf ear" to the obivous difference between failing to inform a client of a possible defense and informing a client of a possible defense while advising that the possibility of success is low. Counsel's performance is squarely on point with the former, not the latter. Counsel failed to discuss any defenses with the movant. A review of the record will divulge the explanation for counsel's omission. The record reveals counsel's omission was grounded in the belief that the "elements of this offense" prevented a legal defense. (Sentencing Transcript, 05/13/03, p.5).

The movant would point the Court's attention to the fact of counsel's sole reliance on the elements of the offense and not the requirements of Crittendon, supra. This omission should not be discounted as a harmless blunder when compared to counsel's thorough citation of the factors in United States v. Ubakanma, 215 F.3d 421 (4th Cir. 2000) throughout the hearing. (Sentencing Transcript, 05/13/03, pp. 3-7). Counsel was apprised of the Ubakanma factors but the same cannot be said for the requirements

of <u>Crittendon</u>. At no time during the colloquy with the Court on the legal defense factor of <u>Ubakanma</u>, did counsel mention <u>Crittendon</u> for evaluation.

Even though counsel may often make instantaneous decisions without the luxury of hindsight that habeas courts enjoy, there are come actions or omissions that are so prejudicial that a reviewing court must necessarily recognize counsel's error as ineffective assistance. With the current record, the counsel's uniformed knowledge of the justification defense is apparent and settles squarely outside the "wide range of reasonable professional assistance." The availability of the justification defense should have struck those learned in the law like the rising sun on a clear day. For this reason, the failure of counsel to advise the movant of an affirmative defense fell well "below an objective standard of reasonableness," <u>Strickland</u>, supra at 688, and constitutes a case of constituionally deficient representation.

### 2. Sound Trial Strategy

The movant thoroughly presented convincing arguments against a "sound trial strategy" challenge in pages 13-15 of the original § 2255 motion, so there is no need to belabor the point again. However, in light of the Magistrate Judge's findings, the movant submit counsel's error was not "sound trial strategy."

Sound trial strategy rooted in the principle that counsel's decision would be beneficial to his client at its conception. A tactial decision is not sound, regardless of the time, when the marginal cost to a defendant outweigh the benefit. Assuming counsel was knowledgeable of a justification defense at the time

-6-

of the plea, he could not have understood a guilty plea to be more beneficial than proceeding to trial. It was counsel who discovered the error in the plea agreement as to the maximum penalty that resulted in a revised plea agreement. (Sentencing Transcript Transcript, 05/13/03, pp. 9-11). Therefore, counsel knew the movant faced a statutory minimum of fifteen (15) years in spite of what the guideline range might be.

Pursuant to U.S.S.G. § 4B1.2(a), the movant's guideline range would have been 235-293 months without a U.S.S.G. § 3E1.1 reduction. With the three-point reduction pursuant to § 3E1.1, the movant's guideline range was 168-210 months but the § 924(e) enhancement aggravate the range to 180-210 months. Proceeding to trial with a justification defense, the movant's hypothetical guideline range would have been 188-235 months. <u>United States v. Randle</u>, 1999 U.S. App. LEXIS 19080 (4th Cir. 1999)[1]. Based on the above facts, counsel had no strategic reason to advise the movant to plead guilty.

### 3. Motion to Withdraw Hearing

Finally, the movant objects to the Magistrate Judge's reliance on the Court's ruling on the motion to withdraw guilty plea. While the Magistrate Judge recognized the difference in the present claim ant the ambiguous claim raised during the hearing, the movant request the Court to weigh all evidence in the record and determine whether each of the four requirements of <u>Crittendon</u>

---

1. Pursuant to Rule 36(c) of United States Courts of Appeals Rules for the Fourth Circuit, a copy of the unpublished disposition has been attached as Exhibit A.

have been established.

As a preliminary mattern the movant argue that the Fourth Circuit did not review the present claim on the movant's direct appeal. It is evident from the standard of review that the two claims are not the same. While the withdraw of a guilty plea is reviewed for abuse of discretion, a denial of a requested jury instruction is reviewed de novo. Ubakanma, supra at 421; United States v. Perrin, 45 F.3d 869, 871 (4th Cir. 1995)(standard of review). Furthermore, the Fourth Circuit affirming the district court's denial of the motion to withdraw the guilty plea does not establish that the movant had no right to the justification defense instruction. A standard of review is a decisive factor even when the claims are identical. See United States v. Mackins, 315 F.3d 399, 408-410 (4th Cir. 2003)(different results of an issue under plain error than harmless error).

The movant request the Court to re-examine the ambiguous ruling at issue. The movant's basis for this request is: (1) the Court's interpretation of the law; (2) the Court's reliance on the statute for exceptions; and (3) the uncertainty as to the defense theory proposed. A review of the record and relevant case law will uncover the necessary support for the movant's contention that a full and fair hearing would warrant a different conclusion.

First and foremost, the movant submit that the Court's interpretation of the law was erroneous. During the hearing, the Court inferred that once the movant "walked out of the house" with the firearm, he lost any claim to a legal defense. (Sentencing

Transcript, 05/13/03, p.14). Due to counsel's omission, the Court was not apprised of the holding in United States v. Paolello, 951 F.2d 537 (3rd Cir. 1991), where a defendant actually fled the scene after the police arrived and the Court still held that the defendant was entitled to jury instruction on justification defense. Moreover, the movant's ex-wife continued to pursue him outside of the home and even ripped the shirt off his back in the front lawn. Clearly, the Court would agree now that the defendant was still entitled to the justification defense after he walked outside of the home. **Cf.** United States v. Rush, 90 Fed. Appx. 695 (4th Cir. 2004)(copy attached to Movant's Reply).

Secondly, the movant argue that the Court should not have turned to the statute for exceptions and/or defenses. (Sentencing Transcript, 05/13/03, p.15). While the movant concedes that the statute does not contain any exceptions, Bryan v. United States, 524 U.S. 184, 188 (1988), the movant demonstrates that the exceptions (i.e., defenses) lay in common law, not the statute. Crittendon, supra at 330. The Court's approach was misplaced by relying on the statute.

Thirdly, the Court could not properly rule on the legal defense on account of counsel's failure to clearly state which due defense the movant would present. There are several affirmative defenses (e.g., self defense, necessity, innocent, coercion, duress, justification, etc.) but the Fourth Circuit has only readily applied the justification defense to § 922(g)(1) offenses. Recently, the Fourth Circuit rejected the application of an innocent defense to § 922(g)(1) offenses.

In <u>United States v. Gilbert</u>, 430 F.3d 215 (4th Cir. 2005), the Court recognized that some affirmative defenses are "wholly absent from the statutory text" and declined to allow them to be asserted in light of a § 922(g)(1) charge. Moreover, the Court distinguished the difference between an innocent and justification defense. <u>Id</u>., at 219("there are sound reasons why justification is plausible but innocent possession is not."). Faced with such clarification, the movant request the Court to evaluate the evidence in light of the differences in the two.

The movant is mindful that the scope of the district court's discretion to manage a trial is particularly board. But in the same respect, the Fourth Circuit held that a district court's wide-range control must observe that "the government has the right and the burden to prove..it case-in-chief...and that therefore the district court must givethe government a reasonable opportunity to carry this burden." <u>United States v. Janati</u>, 374 F.3d 263, 275 (4th Cir. 2004). The movant is the same position as the government in his attempt to raise a justification defense and as the Fourth Circuit recognized the government's right, the movant submit that counsel's failure to inform him of the availability of the justification defense negate him an opportunity to do so.

## II. EVIDENTIARY HEARING

The movant objects to the Magistrate Judge's failure to hold an evidentiary hearing on the matter before filing his Findings and Recommendation. The movant submits that the motions and records do not conclusively demostrate that he is entitled to

no relief.  "Section 2255 of Title 28 U.S.C. provides that unless the record conclusively shows that the prisoner is entitled to no relief, the district court should counls an evidentiary hearing and state its findings and conclusions." United States v. Young, 644 F.2d 1008, 1013 (4th Cir. 1981).

Therefore, in order for the lack of an evidentiary hearing in this case to be proper, the record must conclusively show either that a justification defense did not exist or that the counsel's failure to specically advise the movant of the justification did not adversely impact his performance.  The movant alleges that counsel never discussed any form of affirmative defenses before advising him to accept the plea agreement.  The movant further alleges that he would have proceeded to trial with a jsutification defense regardless of the success rate.  While the Court can make no judgment regarding the outcome of an appeal of the denial of requested jury instruction, the Court cannot find that the record conclusively shows that the movant is not entitled to habeas relief.  Whereas, the movant submit that § 2255 mandates that an evidentiary hearing be held.

### III. ISSUANCE OF CERTIFICTE OF APPEALABILITY

Title 28 U.S.C. § 2253 states in pertinent part: "(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from...(B) the final order in a proceeding under section 2255."  If the Court ultimately denies the § 2255 motion, the movant request a certificate of appealability be issued for the following: "whether the movant proved by a preponderance of evidence that

he was entitled to jury instruction on the justification defense."

The movant bears the burden of substantially demonstrating that the denial of his § 2255 motion denied him a constitutional right. Miller-El v. Cockreli, 537 U.S. 322, 336 (2003). The movant can carry this burden by demonstrating "that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983).

In the present objections, the movant formally requested this Court to narrow the overly broad ruling on the "legal defense" that occurred during the motion to withdraw the guily plea hearing to only one or more of the requirements of Crittendon. By specifying which requirement of Crittendon is not satisfied, the movant's argument will be "adequate to deserve encouragement to proceed further," given the seriousness of the crime and his sentence and the likelihood "that an appellate court could resolve the issues in a different manner." Moreover, this is the movant's first § 2255 motion and that the dismissal of a § 2255 motion is a "serious matter" that risks "injury to an important interest in human liberty." Lonchar v. Thomas, 517 U.S. 314, 324 (1996). Therefore, this Court should grant a certificate of appealability as to the above issue, if the Court denies the § 2255 motion.

## IV.  CONCLUSION

For the foregoing reasons, Movant's objections should be sustained and his § 2255 motion granted. Or, in the alternative, an evidentiary hearing should be held to develop the record further

he was entitled to jury instruction on the justification defense."

The movant bears the burden of substantially demonstrating that the denial of his § 2255 motion denied him a constitutional right. Miller-El v. Cockreli, 537 U.S. 322, 336 (2003). The movant can carry this burden by demonstrating "that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983).

In the present objections, the movant formally requested this Court to narrow the overly broad ruling on the "legal defense" that occurred during the motion to withdraw the guily plea hearing to only one or more of the requirements of Crittendon. By specifying which requirement of Crittendon is not satisfied, the movant's argument will be "adequate to deserve encouragement to proceed further," given the seriousness of the crime and his sentence and the likelihood "that an appellate court could resolve the issues in a different manner." Moreover, this is the movant's first § 2255 motion and that the dismissal of a § 2255 motion is a "serious matter" that risks "injury to an important interest in human liberty." Lonchar v. Thomas, 517 U.S. 314, 324 (1996). Therefore, this Court should grant a certificate of appealability as to the above issue, if the Court denies the § 2255 motion.

## IV.  CONCLUSION

For the foregoing reasons, Movant's objections should be sustained and his § 2255 motion granted. Or, in the alternative, an evidentiary hearing should be held to develop the record further

with the assistance of a skilled attorney. In the event of a denial, a certificate of appealability should be granted.

Respectfully submitted,

*/s/ John D. Mooney*

John David Mooney
Reg. No. 04890-088
F.C.I. Gilmer
P.O. Box 6000
Glenville, WV 26351

## CERTIFICATE OF SERVICE

I, John David Mooney hereby certify that I have served a true and correct copy of the following:

### OBJECTIONS TO THE FINDINGS AND RECOMMENDATION

which is deemed filed at the time it was delivered to prison authorities for forwarding to the Court, <u>Houston v. Lack</u>, 487 U.S. 266 (1988), upon the court and the attorney of record, by placing the same in a sealed, postage prepaid envelope addressed to:

| | |
|---|---|
| Honorable Robert C. Chambers<br>Office of the Clerk<br>P.O. Box 1570<br>Huntington, WV 25716 | Honorable Maurice G. Taylor<br>Office of the Clerk<br>P.O. Box 1570<br>Huntington, WV 25716 |

Michael L. Keller
AUSA
P.O. Box 1713
Chareston, WV 25326-1713

and deposited the same in the U.S. Postal Mail at the Federal Correctional Institution in Glenville, West Virginia on ~~April 18, 2005~~ July 31, 2006.

*/s/ John David Mooney*

**UNITED STATES OF AMERICA, Plaintiff-Appellant, v. CHARLES RANDLE SHIRES, Defendant-Appellee.**
**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**1999 U.S. App. LEXIS 9027**
**No. 98-4635**
**May 10, 1999, Decided**

**Notice:**

RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**Editorial Information: Subsequent History**

Reported in Table Case Format at: 1999 U.S. App. LEXIS 19080.

**Editorial Information: Prior History**

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry C. Morgan, Jr., District Judge. (CR-98-10).

**Disposition**
    AFFIRMED.

**Counsel**        ARGUED:
Janet Sue Reincke, Assistant United States Attorney, Norfolk, Virginia, for Appellant.

Rodolfo Cejas, II, Norfolk, Virginia, for Appellee.

ON BRIEF: Helen F. Fahey, United States Attorney, Norfolk, Virginia, for Appellant.

**Judges:** Before WIDENER and NIEMEYER, Circuit Judges, and BROADWATER, United States District Judge for the Northern District of West Virginia, sitting by designation.

Opinion

**OPINION**

PER CURIAM:

On May 5, 1998, a jury convicted Charles Shires on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922 (g)(1), 924(e)(1). At sentencing, the district court awarded Shires a two-level reduction in offense level for his sentence pursuant to United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 3E1.1 for acceptance of responsibility. The government now appeals the district court's determination that Shires was entitled to this reduction. We affirm.

On July 4, 1997, police officers for the city of Portsmouth, Virginia responded to a dispatched radio call reporting gunshots. Thomas Edwards, Shires's neighbor, placed the call to the police after hearing the gunshots and briefly discussing the gunfire with Shires. Upon their arrival, the officers found Shires sitting on a couch in the den area of his home. After a brief conversation, the officers asked Shires to accompany them outside. The officers handcuffed Shires and placed him in a police cruiser for safety purposes. The officers requested permission to search Shires's house. Shires reportedly answered that "[he] didn't see what the big deal was. I just shot a couple of shots. It's no big deal. It's the Fourth of July, for Christ's sake." The officers told Shires that they needed to locate the firearm, and he replied that "the gun is under the table." The officers confirmed Shires's consent before entering Shires's house and discovering a .38 caliber Smith & Wesson revolver under a coffee table.

A jury convicted Shires of being a felon who did unlawfully and knowingly possess a revolver that had been shipped or transported in interstate commerce pursuant to 18 U.S.C. § 922 (g)(1). At sentencing, the district court commenced with a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2). The court further determined that Shires was entitled to a two-level reduction in offense level for acceptance of responsibility, relating that he never denied the charges against him, admitted that he possessed the weapon, and did not present untruthful testimony during the course of his trial. The resulting offense level was 22, with

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A.

a Criminal History VI, for a guideline range of 84 to 105 months. The court sentenced Shires to 84 months imprisonment. The government appeals the court's award of a two-level reduction to Shires for his acceptance of responsibility.

U.S.S.G. § 3E1.1 permits the district court to decrease a defendant's offense level by two "if the defendant clearly demonstrates acceptance of responsibility for his offense." In reviewing the district court's determination, the Guidelines provide that the district court "is in a unique position to evaluate a defendant's acceptance of responsibility," and its decision "is entitled to great deference on review." U.S.S.G. § 3E1.1 , app. note 5; *United States v. White*, 875 F.2d 427, 430-31 (4th Cir. 1989). This deference is necessary because "[a] defendant's credibility and demeanor play a crucial role in evaluating whether he is genuinely contrite and has accepted responsibility," and the district court is in the best position to evaluate the defendant. *United States v. Harris*, 882 F.2d 902, 905 (4th Cir. 1989). The district court's determination of whether to grant a reduction for acceptance of responsibility is a factual matter that we may not disturb on appeal unless clearly erroneous. *United States v. Castner*, 50 F.3d 1267, 1279 (4th Cir. 1995). In order to receive reduction for acceptance of responsibility, "a defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted 'personal responsibility for his criminal conduct.'" *Castner*, 50 F.3d at 1279 (quoting *United States v. Martinez*, 901 F.2d 374, 377 (4th Cir. 1990)).

In this case, the government challenges the district court's factual determination of acceptance of responsibility on two grounds. First, the government contends that Shires did not accept responsibility for his criminal conduct because he never admitted criminal intent. Second, the government argues that because a jury convicted Shires of the crime, his acceptance of responsibility was not timely and he is not entitled to a finding of acceptance of responsibility. We hold that the district court's decision was not clearly erroneous.

We disagree with the government's first contention that Shires failed to accept responsibility for his criminal conduct. The record supports the district court's determination that Shires never denied his criminal possession of the revolver. After the police officers arrived at his house, Shires stated: "[He] didn't see what the big deal was. I just shot a couple of shots. It's no big deal. It's the Fourth of July, for Christ's sake." This statement indicates that Shires never denied his possession of the revolver. Rather, by admitting that he fired the gun, Shires had to admit that he was in possession of the gun. The government to the contrary, Shires could not have fired the gun without having it in his possession at the time he fired it.

Furthermore, Shires explicitly admitted his conduct during his sentencing proceedings. In his position papers filed with the court relating to sentencing, Shires stated that "[he] has always admitted his guilt in possessing the weapon but he has, in his own mind, disputed that he intended to violate the law by his possession on July 4, 1997." Shires also admitted that he possessed the firearm when he testified during his sentencing hearing.

I was, uh -- it's no excuse. I just didn't think about what

I was doing. I didn't mean any criminal intent, but I guess

I realize now how bad it was, what I did. I'm sorry for what

I did.

Throughout the prosecution of his crime and sentencing, Shires repeatedly admitted that he possessed the revolver.

The principal contention of the government is that Shires never admitted to a criminal intent which the government argues is a necessary element of the crime. The government, however, would require Shires to admit more than is necessary for a

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A

violation of § 922(g)(1). The statute, possession of firearm by a convicted felon, requires no more than Shires's voluntary possession of a firearm. Therefore, as long as Shires was conscious and aware of his actions--that he did not act out of ignorance, mistake, accident, or some other innocent reason-he satisfies the statute. The crime is for a convicted felon "to . . . possess . . . any firearm or ammunition."

The record indicates both that Shires was fully aware of his possession and that he admitted it throughout the criminal proceedings. Shires admitted to the officers at the scene that he fired the revolver, and he directed the officers to where they could find the weapon, conduct which could only indicate an admission of guilt, possession of the revolver.1 The record contains no evidence that Shires was anything but conscious and aware of his possession of the firearm and that he never denied such.

The government also argues that Shires is not entitled to the reduction for acceptance of responsibility because his acceptance was untimely. In effect, the government contends that Shires is not entitled to the two-level reduction because he went to trial on his charges and was convicted. We disagree with the government's position. The Guidelines explicitly state that a defendant may still receive the adjustment for acceptance of responsibility after a criminal trial and conviction. It is true that the two-level reduction for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 , app. note 2. Nevertheless, "[a] defendant may exercise his right to trial and still receive an adjustment for acceptance of responsibility, [although] such situations are rare and the determination of acceptance must 'be based primarily upon pre-trial statements and conduct.'" *Castner*, 50 F.3d at 1279 (quoting U.S.S.G. § 3E1.1 , app. note 2). Further, while U.S.S.G. § 3E1.1 , app. note 1(h) states that "the timeliness of the defendant's conduct in manifesting responsibility" is a consideration for the court in determining a defendant's eligibility for the reduction, it is not *the* dispositive factor.

The district court has substantial discretion on the issue of the timeliness of a defendant's acceptance of responsibility. *U.S. v. Jones*, 31 F.3d 1304, 1315 (4th Cir. 1994). This circuit has considered several cases in which the defendant has accepted responsibility for his criminal conduct after his conviction by trial, and we have never stated that post-trial acceptance bars the defendant from receiving the reduction. See *Castner*, 50 F.3d at 1279-80; *United States v. Gordon*, 895 F.2d 932, 937 (4th Cir.), cert. denied, 498 U.S. 846, 112 L. Ed. 2d 98, 111 S. Ct. 131 (1990); *United States v. Strandquist*, 993 F.2d 395, 401 (4th Cir. 1993). Undoubtedly, the timing of a defendant's acceptance of responsibility is a factor that the Guidelines require a district court to consider in awarding a two-level reduction. We do not, however, interpret U.S.S.G. § 3E1.1 to prohibit an adjustment for acceptance of responsibility if the defendant, rather than pleading guilty, is tried and convicted of the crime. The rule the government asks us to adopt is very nearly a *per se* rule of prohibition, which we decline to do as has the Guidelines.

U.S.S.G. § 3E1.1 , app. note 1 lists several considerations that the district court may consider, but is not limited to, in determining whether a defendant qualifies for a reduction for acceptance of responsibility. In addition to the timeliness of the defendant's acceptance, these considerations include: "(a) truthfully admitting the conduct comprising the offense(s) of conviction; . . . (b) voluntary termination or withdrawal from criminal conduct or associations; . . . (d) voluntary surrender to authorities promptly after commission of the offense; . . . (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; . . . (h) timeliness of defendant's conduct in manifesting acceptance of responsibility. U.S.S.G. § 3E1.1 . The record

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A

in this case contains evidence that Shires fulfilled these criteria and no evidence that he did not. Shires never denied his possession of the revolver and admitted to the officers that he had fired the gun, which necessarily implies possession. Shires voluntarily terminated his conduct before the officers arrived at his house and voluntarily surrendered to the officers by not challenging them when they handcuffed him and placed him in their cruiser. Further, Shires voluntarily assisted the officers in recovering his gun by consenting to the search of his house and directing the officers to the location of the revolver. Shires admitted possession of the gun when the officers arrived and has on all occasions since. Shires never denied his criminal conduct and cooperated with the police in all aspects of their immediate investigation of his crime.2

The district court is in a unique position to evaluate the defendant's acceptance of responsibility, and its factual determination is entitled to great deference on review. The district court was in the best position to assess Shires's demeanor and credibility. We may not second-guess its judgment unless its determination was clearly erroneous. Here, the record supports the court's decision because it indicates that Shires freely admitted his criminal act at all times, never denied his criminal conduct, accepted full responsibility for his conduct, and assisted the police in their investigation of his crime.

Accordingly, the sentence is

AFFIRMED.

### Footnotes

Footnotes for Opinion

1    During his sentencing, Shires admitted that he was aware that it was illegal for him to possess a firearm. He stated that he had been warned against it after his prior felony convictions.

2    At sentencing, the district court noted that one of its reasons for finding that Shires accepted responsibility was that Shires never presented any untruthful testimony to the court. We recognize that a defendant is "not entitled to a reduction for acceptance of responsibility merely because he did not obstruct the administration of justice during his trial." *Castner*, 50 F.3d at 1279. Here, however, Shires's conduct presented additional considerations for the district court to evaluate in determining whether to award the reduction. The record contains sufficient evidence beyond Shires's failure to present untruthful testimony to support the finding of acceptance of responsibility.

© 2006 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A

Sndr
#67940-009
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 6600
BECKLEY, WV - 26351-6600

CLERK, SOUTHERN DISTRICT OF WEST VIRGINIA
UNITED STATES DISTRICT COURT
P.O. BOX 1570
HUNTINGTON, WV 25716-1570

