PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

JOHN DAVID MOONEY,
    *Defendant-Appellant.*

No. 06-7565

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(3:02-cr-00231; 3:04-cv-1001)

Argued: May 23, 2007

Decided: August 6, 2007

Before NIEMEYER and GREGORY, Circuit Judges, and
David C. NORTON, United States District Judge for the
District of South Carolina, sitting by designation.

---

Reversed, judgment of conviction and sentence vacated, and case remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Norton joined.

---

## COUNSEL

**ARGUED:** Meghan Mary Poirier, Third-Year Law Student, WAKE FOREST UNIVERSITY, School of Law, Winston-Salem, North Carolina, for Appellant. Miller A. Bushong, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Beck-

ley, West Virginia, for Appellee. **ON BRIEF:** John J. Korzen, WAKE FOREST UNIVERSITY, School of Law, Winston-Salem, North Carolina, for Appellant. Charles T. Miller, United States Attorney, Charleston, West Virginia, for Appellee.

## OPINION

NIEMEYER, Circuit Judge:

In this proceeding under 28 U.S.C. § 2255, John Mooney presented evidence that on August 4, 2002, in Huntington, West Virginia, he seized a firearm from his ex-wife in self-defense, when his ex-wife, who was intoxicated, pointed it at his head. He then walked several blocks to his place of employment to hand the weapon over to the police. Because Mooney was a convicted felon, however, he was charged with the unlawful possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Despite Mooney's belief that his possession of the firearm was justified in the circumstances and that he did "the right thing" in returning it to the police, his counsel advised him that justification provided no defense to a violation of § 922(g). His counsel stated, "All the prosecutor has to prove was that [Mooney] was a felon with a firearm." Relying on counsel's advice, Mooney reluctantly pleaded guilty, and the district court sentenced him to 180 months' imprisonment. On direct appeal, we affirmed with an unpublished opinion.

Mooney filed a timely § 2255 motion, claiming that his guilty plea was involuntary in that his counsel rendered him ineffective assistance by not investigating the justification defense and by advising him to plead guilty because there was no such defense to § 922(g). Mooney also claimed that pursuant to the district court's inquiry, his counsel inaccurately represented to the court during his Rule 11 plea colloquy that "if this case went to trial, there would be no meritorious legal defense to this charge." In his motion, Mooney alleged that a quick search would have revealed that the Fourth Circuit, as well as most of the other circuits, has explicitly "recognized the justification defense in reference to Title 18 U.S.C. § 922(g)(1)," citing *United*

*States v. Perrin*, 45 F.3d 869 (4th Cir. 1995), and *United States v. Crittendon*, 883 F.2d 326 (4th Cir. 1989).

The district court denied Mooney's § 2255 motion noting,

> [W]hile Petitioner may have been able to successfully show that he was under a present threat of death or serious bodily injury at the time he took the gun from his ex-wife's possession, he is unable to show a causal connection between that threat and his continued possession of the gun. Petitioner's continued possession of the weapon after leaving the home negates his possible defense.

Accordingly, the court found that "Counsel's failure to advise Petitioner of the defense of justification can be consider[ed] sound trial strategy and does not support a claim of ineffective assistance of counsel." We granted a certificate of appealability.

Based on the record made in connection with the § 2255 motion, we conclude that in connection with Mooney's guilty plea, Mooney's counsel provided ineffective assistance of counsel, and but for that assistance, Mooney would not have pleaded guilty. We also conclude that if Mooney were able to present the same facts at trial, the trial court would be required, under the criteria we articulated in *Perrin* and *Crittendon*, to submit a justification defense to the jury and that the jury would likely consider it favorably. Accordingly, we reverse the district court's order denying Mooney's § 2255 motion, vacate the judgment of conviction and sentence entered against Mooney on May 13, 2003, and remand the case to permit Mooney to withdraw his guilty plea.

I

In denying Mooney's § 2255 motion, the district court relied on the entire record, which included the guilty plea colloquy, sentencing hearing, and the materials presented in the course of the § 2255 proceeding, all of which show the following.

In the early morning hours of August 4, 2002, at approximately

2:00 a.m., John Mooney returned home from his job at Whisman's Bar, a bar seven blocks away. Home for Mooney was apparently the house he shared with his ex-wife, Florencia "Sandy" McCloud.[1] After fixing himself dinner, he retired to the master bedroom, sat on the bed, and began to eat his meal. At that point, McCloud retrieved a .38 caliber revolver from a lockbox under her side of the bed and placed the end of its barrel against the side of Mooney's head, near the temple. Mooney knew that McCloud had been drinking that night and that she had a propensity to brandish and shoot guns at the men in her life. McCloud had pulled a gun on Mooney before, had fired a gun at a boyfriend once, and had fired at and actually hit a different ex-husband with the very same gun whose barrel was touching the side of Mooney's head. Mooney stated he was "scared," and he twirled around and grabbed the gun from McCloud's grasp.

Mooney hurriedly stood up and called his boss Terry Whisman at Whisman's Bar to say that his ex-wife had pulled the gun on him again and that he was bringing it in to hand it over to the police. Before Mooney could leave, however, McCloud angrily demanded the return of the gun and threatened to call the police if Mooney did not return it. Instead of giving the gun back, Mooney himself called 911, but McCloud disconnected the call. Mooney called 911 again, and McCloud again disconnected the call. The transcripts of these two aborted 911 calls, however, recount the verbal fight then ensuing between Mooney and McCloud. McCloud repeatedly told Mooney that he was going to jail, and Mooney responded, "I'm not worried about going to jail. You're losing your gun. You'll never pull it on me again."

Unsuccessful in his efforts to call a 911 operator from the house, Mooney departed for Whisman's Bar according to his original plan to hand the gun over to the police there. As Mooney left the house, McCloud attacked him, ripping off his shirt. Immediately after Mooney departed, McCloud called 911 and reported that Mooney possessed her handgun and was headed for Whisman's Bar.

---

[1] The only disputes in the record appear with respect to whether Mooney was actually sharing the house with McCloud and the basis for their altercation. On these issues the district court found Mooney to be "just as credible, or maybe more so, than [McCloud]."

Mooney walked the seven blocks to Whisman's Bar with the handgun in his pocket. When he arrived, the bar was locked, but Whisman let him in. As Mooney reached for the telephone in order to call 911, Whisman informed him that it was unnecessary to do so because the police were already outside. Mooney then walked out of the bar with his hands in the air, and the police took the gun from his pocket and arrested him without incident.

Mooney was charged in a single-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). Even though Mooney insisted that he was innocent of the charge in the circumstances, he pleaded guilty because his appointed counsel advised him that there was no defense to a felon-in-possession charge.

At his sentencing hearing on May 12, 2003, Mooney sought to withdraw his guilty plea on the basis that he "did something that was right" and was innocent of the charge. But Mooney's counsel expressed his disagreement with Mooney and advised the court that "the elements of this [felon-in-possession] offense [do not] allow for us to make that [justification] argument in front of the jury." The district court denied Mooney's request to withdraw his guilty plea, reasoning that once Mooney walked out of the house with the gun, he "committed a crime" for which there was no justification, "even though [he had] a good reason to take the gun from [McCloud] in the first place." The court denied Mooney's motion to withdraw his plea and sentenced Mooney to 180 months' imprisonment. On direct appeal, we affirmed, holding in a brief opinion that the district court had not abused its discretion in refusing to permit Mooney to withdraw his plea. See *United States v. Mooney*, 90 Fed. Appx. 59 (4th Cir. 2004).

Mooney timely filed a motion under 28 U.S.C. § 2255, seeking to vacate his conviction and sentence based on a claim of ineffective assistance of counsel. See *Hill v. Lockhart*, 474 U.S. 52 (1985); *Strickland v. Washington*, 466 U.S. 668 (1984). He asserted that he pleaded guilty due to counsel's erroneous advice that his charge under 18 U.S.C. § 922(g) was not subject to a justification defense. If he had known of the possibility of a defense, Mooney claimed, he would not have pleaded guilty and would have insisted on proceeding to trial. He also claimed that he likely would have succeeded at trial in per-

suading the court to submit the justification defense to the jury and in convincing the jury of the defense, based on the criteria for the defense articulated in *United States v. Perrin*, 45 F.3d 869 (4th Cir. 1995), and *United States v. Crittendon*, 883 F.2d 326 (4th Cir. 1989). The district court denied Mooney's § 2255 motion, holding that counsel's failure to research the defense of justification was not unreasonable professional assistance because Mooney's "continued possession of the weapon after leaving the home negate[d] his possible defense" under *Crittendon*. From the district court's order dated August 28, 2006, Mooney filed this appeal.

## II

The issue presented is whether representation provided to Mooney by his counsel when Mooney pleaded guilty "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, and whether, "but for counsel's errors, [Mooney] would not have pleaded guilty and would have insisted on going to trial," *Hill*, 474 U.S. at 59. Because the "alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* We resolve this question on the record de novo. *See Becton v. Barnett*, 920 F.2d 1190, 1192 (4th Cir. 1990).

### A

We address first the question of whether defense counsel's performance was reasonable "under prevailing professional norms," *Strickland*, 474 U.S. at 688, such that it was "'within the range of competence demanded of attorneys in criminal cases,'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

It is uncontested that Mooney fully advised his counsel of his version of the facts surrounding his arrest. Mooney also told his counsel that he "should have a defense to the charge since [he] was doing the right thing" in seizing the gun from his wife in self-defense and returning it to the police. As a result of counsel's advice that he had no defense, Mooney agreed to plead guilty, but only on the condition

that "the judge agreed with the fact that there was no defense to the charge."

When Mooney and his counsel appeared before the district court to plead guilty, Mooney tried to explain to the court why he felt his possession of the gun was justified, but, contrary to the arrangement that Mooney and his counsel had reached, Mooney's counsel silenced him, and Mooney reluctantly pleaded guilty. The transcript reads:

> The Court: Mr. Mooney, do you believe you're guilty of the charge contained in the indictment?
>
> Mooney: I did have a gun.
>
> The Court: All right. Do you believe you're guilty of this charge? If you don't believe you're guilty, now is the time to say so for sure.
>
> Mooney: The circumstances surrounding it —
>
> Counsel: I know what he's hung up on, if you'll give me just a moment.
>
> The Court: Go ahead.
>
> (Defense counsel and the defendant conferred privately off the record.)
>
> The Court: All right. Mr. Mooney, do you believe you're guilty of this charge?
>
> Mooney: Yes sir.

Mooney was not, however, comfortable with his plea, still maintaining that he was innocent. At sentencing, he sought to raise the defense again in a motion to withdraw his guilty plea. He told the court:

> I took the gun. I took the gun away from somebody to keep them and me from getting hurt, to turn it in to the Hunting-

ton police, okay? I did what was right. You know, I didn't do what was wrong.

Mooney repeatedly protested that he was innocent, stating, "I'm not guilty of this." His counsel, however, again undermined Mooney's efforts to present his defense, stating, "Mr. Mooney and I have a slight disagreement on this one." Then counsel explained:

> He asserts he's innocent because, while he had possession of the handgun, he was doing it for the right reason. And I don't disagree with that. I think there's plenty of evidence that he was doing it for the right reason. He took this gun away from his wife, who he was afraid was going to shoot him or do something bad, and he took it.
>
> I've advised him that, in my opinion, legally that may not be legal innocence because I don't think that the elements of this offense allow for us to make that argument in front of the jury.
>
> Mr. Mooney understandably disagrees with that and thinks that he should be allowed to argue to the jury that while, yes, he had possession, that the reasons he had possession should somehow nullify that.

The court denied Mooney's motion to withdraw his plea.

Mooney now contends that his counsel did not meet the required standard of representation when he advised Mooney to plead guilty on the erroneous assumption that no justification defense existed. In the language of *Hill*, he argues that counsel "fail[ed] to advise [him] of a potential affirmative defense to the crime charged." 474 U.S. at 59. But he argues in addition that his counsel denied him the condition on which he agreed to plead guilty — to have the judge consider the defense — and affirmatively advocated against him during sentencing when Mooney sought to present the defense through his own explanation. Mooney suggests that with only a few minutes of research, his counsel would have discovered not only that courts routinely entertain such a defense, but also that Mooney's circumstances

presented a credible and likely claim for the jury to consider. Mooney's argument, accordingly, depends on the availability of a justification defense to a violation of 18 U.S.C. § 922(g), which provides, in relevant part, that "it shall be unlawful for any person[,] who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[,] to . . . possess in or affecting commerce, any firearm."

It is well recognized that Congress enacts criminal laws against the preexistence of the common law. *See United States v. Bailey*, 444 U.S. 394, 415 n.11 (1980) (stating that Congress enacts criminal laws "against the background of Anglo-Saxon common law"). And it is equally clear that firmly entrenched in the common law is the justification defense. *See, e.g.*, William Blackstone, 1 *Commentaries* *130 (explaining that "the life and limbs of a man are of such high value, in the estimation of the law of England, that it pardons even homicide if committed *se defendendo* (in self defense); or in order to preserve them"); *United States v. Gilbert*, 430 F.3d 215, 219 (4th Cir. 2005). In *Bailey*, the Supreme Court held that common law defenses of duress and necessity were generally available in prosecutions under 18 U.S.C. § 751(a) for escape from federal prison, even though the statutory language provided no such suggestion. 444 U.S. at 415. The proper conclusion from *Bailey* is that "Congress' failure to provide specifically for a common law defense in drafting a criminal statute does not necessarily preclude a defendant charged with violating the statute from relying on such a defense." *United States v. Panter*, 688 F.2d 268, 271 (5th Cir. 1982). This conclusion is not surprising, however, inasmuch as statutes rarely enumerate the defenses to the crimes they describe, and defenses continue to remain doctrines of the common law, the background against which Congress enacts federal crimes. *See also United States v. Dixon*, 126 S. Ct. at 2445 (assuming that the common law defense of duress would be available to charges under 18 U.S.C. § 922(g) (the same offense at issue here)).

To recognize, in particular, the justification defense to the felon-in-possession offense is not remarkable. "Common sense dictates that if a previously convicted felon is attacked by someone with a gun, the felon should not be found guilty for taking the gun away from the attacker in order to save his life." *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990).

Every circuit to have considered justification as a defense to a prosecution under 18 U.S.C. § 922(g) has recognized it. *See United States v. Leahy*, 473 F.3d 401, 409 (1st Cir. 2007); *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000); *United States v. Gomez*, 92 F.3d 770, 774-75 (9th Cir. 1996); *United States v. Paolello*, 951 F.2d 537, 540-41 (3d Cir. 1991); *Singleton*, 902 F.2d at 472 (6th Cir. 1990); *United States v. Vigil*, 743 F.2d 751, 756 (10th Cir. 1984); *Panter*, 688 F.2d at 271 (5th Cir. 1982); *United States v. Agard*, 605 F.2d 665, 667 (2d Cir. 1979).

In this circuit, we have identified the justification defense and have described its elements, but we have never had occasion to apply it because the criteria for its application have never been fulfilled. *See, e.g., Gilbert*, 430 F.3d at 218 (acknowledging that we have "recognized the plausibility of a justification defense to a felon-in-possession charge"); *Perrin*, 45 F.3d at 873-75; *Crittendon*, 883 F.2d at 329-30; *see also Washington v. United States*, 264 F. Supp. 2d 413, 431-32 (W.D. Va. 2002). As we observed in *Perrin*, "It has been only on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense." *Perrin*, 45 F.3d at 874. Accordingly, "we continue to construe the justification defense for possession of a firearm by a felon very narrowly." *Id.* at 875.

But if the facts were presented at trial that have been established in his § 2255 proceeding, they would satisfy the demanding criteria set forth in *Perrin* and *Crittendon*, as well as the unanimous views of the other circuits, and Mooney would have been entitled to have the justification defense presented to the jury.

In view of this state of the law with respect to the justification defense, it was patently inaccurate for Mooney's counsel to have advised Mooney and to have represented to the court that no such defense was ever available. A justification defense could well have been available if *Crittendon*'s four-prong test were satisfied. Counsel's erroneous legal advice resulted from a failure to conduct the necessary legal investigation. Counsel in criminal cases are charged with the responsibility of conducting "*appropriate investigations, both factual and legal,* to determine if matters of defense can be developed." *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968) (emphasis added);

*see also Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations"). Not only did counsel fail to explore the possibility of a defense, he also intercepted his own client's efforts to present the defense to the court during his plea colloquy and undermined his client's efforts to present the defense at sentencing when Mooney sought to withdraw his guilty plea. We find counsel's performance to fall outside "the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771. While we apply "a heavy measure of deference to counsel's judgments," "reasonable professional judgments" did not "support [counsel's] limitations on investigation" in this case. *Id.*

Moreover, in this case, counsel's deficient performance did not relate to some trivial or mildly important point. Nor did it involve a difficult choice on how to allocate precious legal resources. Rather, counsel's failure to investigate, which resulted in erroneous legal advice and legal representation, went to the heart of Mooney's criminal liability. Counsel knew this; he knew the underlying extraordinary facts; and he knew his client's wishes. Thus, his failure to investigate in the circumstances of this case resulted in faulty legal advice and courtroom misrepresentations on a point of primary importance.

Accordingly, we conclude that the first prong of *Strickland* has been demonstrated.

B

To address the prejudice prong of the *Strickland* standard in the context of a guilty plea, we determine whether "but for counsel's errors, [Mooney] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. And because the error is alleged to be counsel's "failure to advise [Mooney] of a potential affirmative defense," we must also inquire whether "the affirmative defense likely would have succeeded at trial." *Id.*

The record is incontrovertibly clear — not even the government disputes the fact — that Mooney would not have pleaded guilty and would have insisted on going to trial if not for his counsel's erroneous advice. First, he stated this under oath in his § 2255 motion:

> I pled guilty because I truly believed that there was no defense available to the charge. . . . If I would have known of the availability of the 'justification' defense, I would have pleaded not guilty and gone to trial on the grounds that I possessed the firearm only to protect myself from my ex-wife.

Moreover, the underlying record supports his claims. At the guilty plea hearing, the court asked Mooney, "Do you believe you're guilty of the charge contained in this indictment?" Mooney responded, "I did have a gun." Understandably not satisfied with the hesitating response, the court told Mooney that "[i]f you don't believe you're guilty, now is the time to say so." Mooney began to explain, "The circumstances surrounding it — ," but his counsel then cut him off, telling the court, "I know what he's hung up on, if you'll give me just a moment." Of course Mooney was "hung up" on the belief that he was justified in possessing the gun, but after counsel conferred with him off the record, apparently disabusing him of that notion, Mooney responded that he was guilty of the charge. Despite this exchange in court, Mooney still told the court, "My wife was drinking the night that she had the gun out and I was scared. I took it to get it out of the house for my own safety."

Also at the sentencing hearing, where Mooney sought to withdraw his guilty plea on the same basis, he stated to the court again, "I took the gun away from somebody to keep them and me from getting hurt, to turn it in to the Huntington police." He protested, "I'm not guilty of this."

Even though there is no evidence in the record to suggest that Mooney would have pleaded guilty but for his counsel's unprofessional performance, the government yet contends that Mooney was not prejudiced by counsel's performance because the district court, at the sentencing hearing when Mooney presented his motion to withdraw his plea, rejected Mooney's justification defense, stating, "I wouldn't let you or your lawyer argue that to the jury." Under the government's reasoning, Mooney was not prejudiced by counsel's performance because the district court would not have permitted the justification defense even if counsel's performance had been competent.

We find several problems with the government's argument. *First*, the court rejected Mooney's justification defense at the *sentencing* hearing, and therefore the court's statements were irrelevant to the prejudice inquiry, which focuses on whether the defendant would have pleaded guilty in the first place. At the plea colloquy the court relied on Mooney's counsel's representations that "if this case went to trial, there would be no meritorious legal defense to this charge." *Second*, the court did not have the aid of an adversarial process when it rejected Mooney's justification defense. Instead of advocating on behalf of his client, counsel affirmatively contradicted Mooney and represented to the court that no justification defense was available for charges under 18 U.S.C. § 922(g). There was no discussion of case law and no mention of the numerous Fourth Circuit cases referring to the defense, including *Perrin* and *Crittendon*. Mooney was thus left to act essentially as a pro se defendant with both the government and his own counsel aligned against him. *Third*, the district court was incorrect as a matter of law, as we conclude in this appeal.

Under the prejudice prong of the *Strickland/Hill* analysis, we must still determine whether the justification defense would likely have succeeded at trial. *See Hill*, 474 U.S. at 59.

Our decision in *Crittendon* articulates a four-prong test for evaluating the merits of a justification defense to a felon-in-possession charge under § 922(g), stating that to be entitled to the defense, a defendant must produce evidence at trial that would allow the fact finder to conclude that he:

(1) was under unlawful and present threat of death or serious bodily injury;

(2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4) [that there was] a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Crittendon*, 883 F.2d at 330; *see also Perrin*, 45 F.3d at 873-74. Because Congress, in enacting § 922(g), "sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society," *Small v. United States*, 544 U.S. 385, 398 (2005) (quotation marks and citations omitted), we "construe the justification defense for possession of a firearm by a felon very narrowly," *Perrin*, 45 F.3d at 875. Indeed, we reserve its application for the "rarest of occasions." *Id.* at 874; *see also Gilbert*, 430 F.3d at 219.

Considering *Crittendon*'s first prong, the facts in this record certainly demonstrate that Mooney was under an unlawful and present threat of death or serious bodily injury when he seized the gun from his wife. His ex-wife, who smelled of alcohol, had placed the nose of the gun to Mooney's temple. Mooney knew that she had a history of discharging firearms at people, having shot her former husband and once shot at a former boyfriend. She had even pulled a firearm on Mooney before. These circumstances undoubtedly show that Mooney was under an imminent and specific threat of death when he seized the gun. *Cf. Paolello*, 951 F.2d at 542-43 (imminence and specificity requirements satisfied when defendant wrestled gun away from man who struck defendant's stepson with the gun and pointed it into the air); *Panter*, 688 F.2d at 269-71 (imminence and specificity requirements satisfied when defendant stabbed in the abdomen three times with a pocketknife).

In *Crittendon*, we pointed out that most justification defenses in felon-in-possession cases fail at this first step, because "generalized fears will not support the defense of justification." *Crittendon*, 883 F.2d at 330. In that case we rejected the defense for a felon who, eight months prior to his arrest, was shot while walking home from work and therefore carried a weapon for self-defense. *See id.* at 329-30. While "it may have been perfectly rational for the defendant to have feared another attack," the "defendant was not in imminent danger at the time he was arrested on the § 922(g) charge." *Perrin*, 45 F.3d at 874 (summarizing *Crittendon*). Likewise, in *Perrin* itself, we rejected the defense for a defendant who possessed a firearm to defend against a person who had searched for him with a shotgun two days prior to his arrest. Although the fear of attack "may have been rational, it [was] the same type of generalized fear" we rejected in *Crittendon*.

*Id.* at 875. In contrast, the threat facing Mooney was imminent, real and specific, and life-threatening. Indeed, the district court found that Mooney had "a pretty good argument for why [he] took the gun from [his ex-wife] in the first place."

Considering the second *Crittendon* factor, the facts of record show that Mooney did not recklessly place himself in a situation where he would be forced to engage in criminal conduct. There is no evidence on the record that Mooney posed a threat to his ex-wife that would reasonably invite her to put a gun to his head or that he provoked her to point the gun at his head. He testified that he simply returned "home from work," fixed himself a meal, and retired to the master bedroom to eat it. The verbal and physical altercations between Mooney and his ex-wife occurred only *after* Mooney seized the gun from her.

With respect to the third *Crittendon* factor — whether Mooney had a reasonable alternative (to both the criminal act and the avoidance of a threatened harm) — the district court believed that any justification defense failed. While the court acknowledged that Mooney had a good argument for taking possession of the gun in the first place, the court believed that Mooney's continued possession of the gun upon leaving the house extinguished any plausible justification defense. The court observed, "Once [Mooney] walk[ed] out of that house with the gun, especially the fact that [he] continue[d] to possess it, [was] enough [to] make [Mooney] guilty of this crime." The court did find that after Mooney left the house, he walked *directly* to the bar, intending to turn the gun over to police:

> All the law enforcement officers involved in your arrest agree that you took that gun with you and you went to the bar and that at least perhaps you told the bar owner that you had taken the gun from her and you intended to turn that gun over to the police.

The court found, however, that § 922(g) "doesn't create any sort of exception for that reason for having a gun." But the district court did posit that if it was Mooney's intention "to immediately turn the weapon over to the authorities, he could simply have waited for the

police to respond to his 911 phone calls instead of securing the weapon in his pocket and walking to another location."

We wholeheartedly share the district court's attentiveness to a felon's continued possession of a firearm after justifiably gaining possession. Such attention is necessary for the narrow application of the defense. After all, the purpose behind the statute is to "keep firearms away from the persons Congress classified as potentially irresponsible and dangerous," *Barrett v. United States*, 423 U.S. 212, 218 (1976), and "it is the retention of a firearm, rather than the brief possession for disposal . . . which poses the danger which is criminalized." *United States v. Mason*, 233 F.3d 619, 625 (D.C. Cir. 2000) (quotation marks and citation omitted).

But here, Mooney's conduct appears to have been necessary and efficient in disposing of the gun. Mooney's first act after gaining possession of the gun was to call his boss at Whisman's Bar to tell him that he was bringing the gun in to turn it over to the police. Before Mooney could leave, however, his wife confronted him and demanded the return of the gun. Still holding the telephone, Mooney called 911 to report the incident himself, but his wife disconnected the call. Mooney called 911 again, and his wife again disconnected the call. Mooney then tried to depart for Whisman's Bar, but a physical altercation with his ex-wife detained him. After his ex-wife ripped off his shirt, Mooney freed himself and walked directly to Whisman's Bar, where, upon his arrival, he surrendered the gun to the police.

The trajectory of Mooney's actions all pointed toward handing over the gun to the police. As is essential to the defense, he did not unnecessarily delay or detour at any point. Mooney's manifest intention from seizure to hand-over was the single-minded effort to rendevous with the police. The district court faulted Mooney for not remaining at the house, but his intoxicated ex-wife would not permit him to call 911, and the situation continued to threaten a much greater verbal and physical altercation. While that may still have been an alternative, the safest and most efficient alternative was surely to exit the inflamed situation and follow through with his original plan to turn the gun over to the police at the bar. As he protested several times to the court, "I did the right thing." When a defendant pursues, immediately and without delay or detour, a reasonable course for

handing over a gun to proper authorities after legally taking possession of it, we cannot fault him for not choosing a different reasonable course.

Also with respect to the third *Crittendon* factor, it would appear that Mooney had no reasonable alternative to the threatened harm to his life or body but to seize the firearm in the first place. The firearm was pointed at his head without warning, and there was no opportunity to leave before McCloud unexpectedly pointed it at him. Moreover, while the gun was at his head, there was no reasonable possibility of escape without a serious and immediate risk of being shot. These circumstances are not analogous to the more common situation where one could escape, call the police, run to a safe house, or otherwise avoid the threat without possessing the firearm.

Finally, the fourth *Crittendon* prong is satisfied here. There was a direct causal relationship between Mooney's possession of the gun and his avoidance of the threatened harm. The only way for Mooney to have removed the threat posed by his ex-wife was to seize the gun that was being held against his temple.

We do not conclude that Mooney will necessarily succeed at trial in establishing the facts supporting the justification defense. But we do conclude that the facts, as developed in the record and as recognized by the district court, present one of those rare occasions which, if they were proven at trial, would require the court to present the defense to the jury and would likely persuade the jury.[2] More point-

---

[2] At any trial at which Mooney raises the justification defense, he will, of course, bear the burden of production, see *Crittendon*, 883 F.2d at 330 (noting that "the defendant must produce evidence" satisfying the defense), and the burden of proving the defense by a preponderance of the evidence. See *Dixon*, 126 S. Ct. at 2247-48 (noting "in the context of [18 U.S.C. § 922]," the defendant "bear[s] the burden of proving the defense of duress by a preponderance of the evidence"); see also *Leahy*, 473 F.3d at 408-09 (holding that, in prosecutions under 18 U.S.C. § 922(g), the defendant bears the burden of proving the defense of justification by a preponderance of the evidence); *United States v. Beasley*, 346 F.3d 930, 935 (9th Cir. 2003) (same); *United States v. Dodd*, 225 F.3d 340, 350 (3d Cir. 2000) (same); *Deleveaux*, 205 F.3d at 1296 (11th Cir.

edly, the facts accepted by the district court demonstrate that, in pleading guilty, Mooney did not receive legal representation that fell within the range of competence demanded of attorneys in criminal cases and that Mooney was prejudiced by his counsel's failure.

In short, we conclude that Mooney was denied effective assistance of counsel in entering a guilty plea and that he was prejudiced by that ineffective assistance. Accordingly, we reverse the district court's order denying Mooney's motion under 28 U.S.C. § 2255, vacate the original judgment of conviction and sentence entered in this case, and remand this case to the district court with directions to permit Mooney to withdraw his guilty plea.

*IT IS SO ORDERED.*

---

2000) (same). This assignment of burdens is consistent with the long-established common law rule that the burden of proving "affirmative defenses 'indeed, all circumstances . . . of justification, excuse or alleviation' rested on the defendant." *Patterson v. New York*, 432 U.S. 197, 202 (1977) (quoting Blackstone, 4 Commentaries *201).